John NAASZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–96–01257–CR.

Court of Appeals of Texas, Dallas.

July 30, 1998.

Allan Fishburn, Dallas, for Appellant.

Lori L. Ordiway, Asst. Dist. Atty., Dallas, for State.

Before MORRIS, JAMES and BRIDGES, JJ.

## OPINION

JAMES, Justice.

John Naasz shot and killed his estranged wife. He was indicted for murder and pleaded guilty. A jury heard evidence on punishment. In mitigation of punishment, appellant asserted he killed his wife under the influence of sudden passion arising from an adequate cause. The jury answered "no" to appellant's special issue on sudden passion and assessed punishment at life in prison. In a single point of error, appellant contends the evidence is insufficient to support the jury's finding that appellant failed to prove he killed his wife under the influence of sudden passion arising from an adequate cause. We affirm.

## FACTS

Although certain details of the shooting are contested, the general events surrounding the shooting are undisputed. The month before the shooting, appellant's wife, Selena Naasz, moved out of appellant's apartment, and appellant filed for divorce. The two continued to share custody of their eight-year-old son, Charles. Shortly after Selena moved out, appellant bought a gun.

About 10:00 p.m. the night of the shooting, appellant picked up a friend, Douglas Watts, at a Wal–Mart store where Watts worked. Appellant was unusually quiet. Rather than drive Watts home as expected, appellant drove to an apartment complex where Cornell Spradling lived. Selena and Spradling had been dating. Upon arriving at the complex, appellant spotted Selena's gray van.

He then drove to the back of the complex, parked, and told Watts to hand him a gun that was in the glove box. Watts did so. Appellant told Watts to leave if he wished. Appellant then walked to the front of the apartments, confronted his wife at the door of the van, and shot her seven times at close range. The seven shots emptied the gun. Appellant's son, Charles, was sitting in the van and became hysterical upon witnessing his father shoot his mother. As Charles began screaming, appellant ran away through the apartment complex, returned to his truck, and fled the scene. Watts remained at the scene.

Witnesses to the shooting called emergency personnel and attempted unsuccessfully to resuscitate Selena. Police arrived a few minutes later and also failed to resuscitate her. About an hour later, appellant telephoned Watts' sister and asked, "Is the bitch dead yet?" The following morning appellant voluntarily surrendered to the police.

## SUDDEN PASSION

■ Appellant contends the evidence is "insufficient to support the jury's finding that appellant failed to prove by a preponderance of the evidence he killed his wife under the influence of sudden passion arising from an adequate cause." We conclude the evidence is sufficient to support the jury's verdict.

■ The statutory provision in dispute is relatively new. Before September 1, 1994, "sudden passion arising from an adequate cause" was an element of the offense of voluntary manslaughter. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913, *amended by* Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1123, 1124, *repealed by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614. As of September 1, 1994, however, voluntary manslaughter was eliminated as a separate offense under the penal code. *See* Act of

May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614. Instead, evidence that a defendant acted under the influence of sudden passion is now an issue mitigating punishment for murder. *See* Tex. Penal Code Ann. § 19.02(d) (Vernon 1994). This change in the law was accompanied by a change in the burden of proof. Lack of sudden passion is no longer an element of the State's case for murder. Therefore, the State is *not* required to negate the existence of sudden passion. Rather, the defendant is now required to prove this element by a preponderance of the evidence. *See id.*

Appellant therefore inferentially misstates the burden by contending the evidence is insufficient to support the *jury's finding* that appellant failed to prove sudden passion. Instead, the jury *failed to find* appellant acted under the influence of sudden passion.[1] The failure to find a positive is not the same as the finding of a negative. It was appellant's burden to produce evidence to persuade the jury of the mitigating circumstances. Appellant did not do so. Accordingly, we review appellant's point of error as complaining that the jury's failure to find sudden passion resulted in a judgment which is against the great weight and preponderance of the evidence. *See Bumguardner v. State,* 963 S.W.2d 171, 176 (Tex.App.—Waco 1998, pet. ref'd) (analyzing jury's failure to find sudden passion under factual sufficiency standard); *Rainey v. State,* 949 S.W.2d 537, 542 (Tex. App.—Austin 1997, pet. ref'd) (same), *petition for cert. filed* (April 24, 1998) (No. 98–5002).

### 1. Standard of Review

We have not previously addressed the standard of review under the revised murder statute. The parties have cited us to no case law addressing the standard of review under the new statute when reviewing a jury's failure to find sudden passion as a mitigating factor during the punishment phase of the trial. The State, however, suggests that a

---

1. The following special issue submitted to the jury:

Do you find by a preponderance of the evidence that on the occasion in question, at the time of the commission of the offense for which defendant is on trial the defendant, John Naasz, caused the death of Selena Naasz while he, John Naasz, was under the immediate influence of sudden passion arising from an adequate cause?

The jury answered "No."

factual sufficiency review is appropriate. For the reasons stated, we agree.

When a defendant seeks appellate review of a jury's failure to make a finding on which the defendant has the burden of proof, such as on an affirmative defense, the defendant invokes our factual review jurisdiction. *See Meraz v. State,* 785 S.W.2d 146, 154–55 (Tex.Crim.App.1990). In such an instance, "the correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust." *Id.* at 155. The *Meraz* standard, borrowed from civil practice, was subsequently adopted as the standard of review generally for factual sufficiency challenges. *See Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed); *see also Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996).

We are guided in determining the appropriate review of appellant's complaint by the clear language of section 19.02(d) of the Texas Penal Code: "If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 1994). Under this section, the defendant has the same burden of proof as for an affirmative defense. The proper standard for reviewing a jury's rejection of a defense issue is the standard first stated in *Meraz* and followed in *Clewis. See Bumguardner,* 963 S.W.2d at 176; *Mata v. State,* 939 S.W.2d 719, 724 (Tex.App.—Waco 1997, no pet.); *Stone,* 823 S.W.2d at 381. We see no reason not to apply the same standard of review to questions of sufficiency of the evidence in mitigating issues as are applied in affirmative defense issues. Therefore, we review the point under the often articulated standard of whether the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *See Meraz,* 785 S.W.2d at 155. This holding is consistent with the review utilized by other courts of appeals which have addressed the standard of review under the reformulated statute for sudden passion. *See Bumguard-*

*ner,* 963 S.W.2d at 176 (citing *Meraz* ); *Rainey,* 949 S.W.2d at 542 (citing *Clewis* ).

We note that *Bumguardner,* consistent with *Meraz,* phrases the standard in terms of whether the judgment is against the great weight and preponderance of the evidence. *Rainey,* however, initially phrases the issue in terms of whether the evidence is "factually insufficient" to support the verdict. Traditionally, as factual sufficiency review developed in civil practice, a party with the burden of proof challenged the jury's failure to make a finding by asserting a great-weight-and-preponderance point of error. *Stone,* 823 S.W.2d at 380; *see also Mata,* 939 S.W.2d at 728–29 (Vance, J., concurring). A factually-insufficient-evidence point of error was used for a factual sufficiency challenge by a party who did not have the burden of proof at trial. *Stone,* 823 S.W.2d at 380; *Mata,* 939 S.W.2d at 728–29 (Vance, J., concurring). Both formulations challenge the *factual sufficiency* of the evidence. *Stone,* 823 S.W.2d at 380. By convention, however, different terms have been utilized to identify which party had the burden of proof at trial. *Id.* In either case, the appellate court reviews all the evidence, both for and against the verdict, and determines whether the verdict is so against the great weight of the evidence as to be manifestly unjust.

Arguably, the difference in phrasing between a great-weight-and-preponderance point and an insufficient-evidence point is largely semantical. *See Mata,* 939 S.W.2d at 728 (Vance, J., concurring); *accord Stone,* 823 S.W.2d at 381 (noting that failure to frame great-weight point as factually-insufficient point should not result in waiver). This difference has led to various constructions in attempting to frame the point of error. Thus, in *Bumguardner,* the complaining party asserted that "the evidence was factually sufficient to prove that he acted in the heat of sudden passion." *See Bumguardner,* 963 S.W.2d at 176. In *Rainey,* the contention was made that "the evidence is factually insufficient to support [the] verdict." *See Rainey,* 949 S.W.2d at 542. Nevertheless, in both cases the reviewing court considered all the evidence, determined whether the verdict was so against the great weight and prepon-

derance of the evidence as to be manifestly unjust, and held that the evidence was factually sufficient to support the verdict. *See Bumguardner*, 963 S.W.2d at 176–77; *Rainey*, 949 S.W.2d at 542.

It is important, however, in conducting a factual sufficiency review that an appellate court bear in mind the appropriate burden and level of proof required in the trial court. *Mata*, 939 S.W.2d at 724 n. 3; *Hernandez v. State*, 938 S.W.2d 503, 509–10 (Tex.App.— Waco 1997, pet. ref'd). When a jury fails to make a finding on an issue for which the complaining party has the burden, it is logically consistent with the party's burden to state that the jury's answer is against the great weight and preponderance of the evidence the complaining party presented at trial. It is nonsensical to state that there is insufficient evidence to support the failure to make a finding. Accordingly, we characterize appellant's point of error as a factual sufficiency challenge complaining that the jury's failure to find sudden passion resulted in a judgment which is so against the great weight and preponderance of the evidence as to be manifestly unjust.[2]

We are mindful of the fact that since its opinion in *Clewis* the court of criminal appeals has not extended factual sufficiency review to any punishment issue. *See McGinn v. State*, 961 S.W.2d 161, 169 (Tex. Crim.App.1998); *but see Hughes v. State*, 897 S.W.2d 285, 293 (Tex.Crim.App.1994) (applying factual sufficiency review of special issues in death penalty case without deciding whether such review was appropriate), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995); *Villareal v. State*, 140 Tex.Crim. 675, 146 S.W.2d 406, 409–10 (1940) (holding certain inadmissible, but unobjected to, evidence was insufficient to sustain a jury

finding of "malice" in a death penalty murder case), *overruled on other grounds by Mays v. State*, 563 S.W.2d 260 (Tex.Crim.App.1978). The court of criminal appeals, however, has rejected factual sufficiency review for punishment issues only in capital cases. *See, e.g., McGinn*, 961 S.W.2d at 166–69. The subjective and predictive nature of special issues submitted in these cases distinguishes them from non-capital cases. *Id.* at 169. For example, in *McGinn*, the court considered the appropriateness of a factual sufficiency review of the jury's finding on the issue of future dangerousness. That issue, the court held, "is highly subjective because it calls for a prediction of future events rather than an assessment of events that have already occurred." *Id.* Similarly, the court of criminal appeals has consistently refused to consider sufficiency of the evidence challenges to a jury's finding on the mitigation special issue required by article 37.071, sec. 2(e) of the code of criminal procedure.[3] *See, e.g., McGinn*, 961 S.W.2d at 169; *Green v. State*, 934 S.W.2d 92, 106–07 (Tex.Crim.App.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *McFarland v. State*, 928 S.W.2d 482, 498–99 (Tex.Crim.App.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). "Whether a particular piece of evidence is mitigating in the context of that issue is a normative judgment that is not amenable to appellate review." *McGinn*, 961 S.W.2d at 169.

In contrast, the issue in this case requires a determination of historical fact—whether the defendant caused the death under the immediate influence of sudden passion arising from an adequate cause. Under the prior statute, appellate courts reviewed sufficiency of the evidence challenges to jury findings regarding sudden passion. *See, e.g.,*

---

**2.** In his concurring opinion in *Mata*, Justice Vance suggested that one solution to this confusion is to recognize the burden of proof at trial in the statement of the review. *Mata*, 939 S.W.2d at 730 (Vance, J., concurring). For the instance in which the State has the burden of proof, Justice Vance suggests: *"Given that the burden of proof at trial was beyond a reasonable doubt, does a review of all of the evidence, both for and against the finding, demonstrate that the verdict is clearly wrong and unjust."* *Id.* We have found no opinions, however, adopting this suggestion.

**3.** This issue states: "Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed."

*Ojeda v. State*, 945 S.W.2d 197, 201 (Tex. App.—San Antonio 1997, no pet.); *Saenz v. State*, 930 S.W.2d 249, 252 (Tex.App.—Amarillo 1996, no pet.); *Muhammad v. State*, 911 S.W.2d 823, 828–29 (Tex.App.—Texarkana 1995, no pet.); *see also Johnson v. State*, 815 S.W.2d 707, 709–12 (Tex.Crim.App.1991) (conducting legal sufficiency review). We see no impediment to factual sufficiency review under the new statute merely because sudden passion is now an issue in mitigation of punishment.

In reviewing a challenge to the factual sufficiency of the evidence, we view all the evidence without the prism of "in the light most favorable to the prosecution." *Clewis*, 922 S.W.2d at 129. We set aside a verdict only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust, or "manifestly unjust," or "shocks the conscious," or "clearly demonstrates bias." *Santellan v. State*, 939 S.W.2d 155, 164–65 (Tex.Crim.App.1997); *Clewis*, 922 S.W.2d at 135. Our evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *Santellan*, 939 S.W.2d at 164. The weight to give contradictory testimonial evidence is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor. *Cain*, 958 S.W.2d at 408–09. We cannot set aside a verdict merely because we think a different result is more reasonable. *Id.* at 407. 2.

### 2. Applicable Law

Under the revised murder statute, an individual commits the offense of murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 1994). At the punishment stage of trial, the defendant may raise the issue of whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. *Id.* § 19.02(d). If the defendant proves the issue by a preponderance of the evidence, the offense of murder is punished as a second-degree felony. *Id.*

The current definitions of sudden passion and adequate cause are identical to those set forth in the former voluntary manslaughter statute. *Compare* TEX. PENAL CODE ANN. § 19.02(a) (Vernon 1994) *with* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913 (former TEX. PENAL CODE ANN. § 19.04(b), (c)), *repealed by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614. " 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2) (Vernon 1994). " 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). Because these definitions are identical to the former statute, we continue to rely on decisions arising under the voluntary manslaughter statute for guidance. *Perez v. State*, 940 S.W.2d 820, 822 (Tex.App.—Waco 1997, no pet.) (citing *Roberts v. State*, 590 S.W.2d 498, 501 (Tex.Crim.App. [Panel Op.] 1979)).

██ Legally adequate cause requires some evidence of the condition of the accused's mind at the time of the offense. *Merchant v. State*, 810 S.W.2d 305, 310 (Tex.App.—Dallas 1991, pet. ref'd). Ordinary anger is not adequate cause. *See Ybarra v. State*, 890 S.W.2d 98, 109 (Tex.App.—San Antonio 1994, pet. ref'd). The cause must be the kind that would produce anger, rage, resentment, or terror in a person of ordinary temper so the person is incapable of cool reflection. TEX. PENAL CODE ANN. § 19.02(a)(1) (Vernon 1994); *Merchant*, 810 S.W.2d at 310. Such responses in persons with special susceptibilities are not enough unless the cause would also produce such responses in an ordinary person. *Merchant*, 810 S.W.2d at 310. The accused also may not rely upon cause of his own making, such as precipitating a confrontation. *Nance v. State*, 807 S.W.2d 855, 861 (Tex.App.—Corpus Christi 1991, pet. ref'd).

██ "Sudden passion" requires first that the record contain objective evidence that direct provocation by the victim or

someone acting with the victim occurred at the time of the killing. *Merchant*, 810 S.W.2d at 310. Evidence of prior provocation alone is not enough. TEX. PENAL CODE ANN. § 19.02(a)(2) (Vernon 1994); *Merchant*, 810 S.W.2d at 310. The record must also contain evidence from which the jury could subjectively decide the accused killed the victim while in an excited and agitated state of mind arising out of the direct provocation. *Merchant*, 810 S.W.2d at 310.

### APPLICATION OF LAW TO FACTS

Appellant contends he did not go to Spradling's apartment to kill Selena. According to appellant, the events leading to the shooting arose from his concern for his son's welfare. Appellant testified his son, Charles, is a diabetic requiring three insulin shots per day and close monitoring. On the night of the shooting, appellant called Selena's apartment around 10:00 p.m. and no one answered. Appellant claims he became concerned that Charles had not received his insulin shot. Therefore, after picking up Watts at Wal–Mart, appellant drove to Spradling's apartment because he thought Charles might be there. Selena had told appellant she was tutoring Spradling in classes the two were taking, but appellant suspected she and Spradling were having an affair. Some weeks earlier, appellant had found a sexually suggestive note to Spradling in Selena's belongings along with a sexually explicit photograph. Appellant had previously been to Spradling's apartment two or three times to check on Charles, but he denied stalking Selena.

Appellant further testified that when he got to Spradling's apartment he parked in back of the complex because he could find no other place, not because he was hiding. He then went to find Selena to discuss his son. When he confronted Selena, appellant claims she became belligerent and the two exchanged angry words. She told him to "go screw" himself, shoved him with her shoulder, and grabbed his cap. Appellant became angry and "just lost it." He pulled out his gun. After that, except for a flash, appellant claims to not remember what happened. He "just went blank." After the shooting, he

ran back to his truck and wandered around until the next morning when he turned himself in to the police. Appellant also claimed not to have noticed Charles sitting in the van at the time of the shooting and did not remember calling Watts' sister about an hour later.

Additionally, appellant did not know why he had the gun with him. He claimed to have bought it the previous month for protection because someone had been trying to break into his apartment. He testified that after the shooting, he held the gun to his head but could not bring himself to pull the trigger. He did not remember whether the gun was empty. He later threw the gun away, but helped police recover it the next day.

Appellant's son, Charles, was called to testify by appellant. Charles believed his mother and father had a brief argument and his mother grabbed his father's hat.

A psychiatrist, Dr. James Grigson, also was called to testify by appellant. Grigson testified appellant did not go to Spradling's apartment to shoot Selena. Instead, the shooting was an instant reaction typical of a passion shooting. Appellant was angry at his wife for not adequately taking care of Charles and for associating with what appellant considered to be "some weird people." The anger had been building most recently since the prior Christmas Eve, when appellant claims Selena did not come home until 6:00 a.m. This incident built on prior incidents in which appellant claims Selena neglected her son's care. According to Grigson, Selena's belligerent response when appellant confronted her at the van provoked him to shoot her. Grigson stated that firing seven shots was "overkill," indicative of a passion shooting.

In contrast, the State's evidence showed appellant's conduct was methodical and deliberate, giving appellant adequate time for cool reflection. Appellant's own testimony is consistent with the State's theory that appellant's conduct was premeditated. He admitted he was aware his wife dated other men during their marriage and that she had stayed out late many times. They had previously argued about their son's care and had

also separated before, although appellant had not previously filed for divorce. Selena moved out of appellant's residence the month before the shooting, while appellant was at work. Appellant then filed for divorce, but testified he still hoped for a reconciliation. He bought a gun shortly after Selena moved out. The night of the shooting, he called Selena late in the evening and went to look for her when no one answered the telephone. He took a loaded pistol to her boyfriend's apartment. After spotting Selena's van, appellant parked in back of the complex, asked for his gun, told his friend he could leave, and went to the front of the complex to confront his wife. After the shooting, appellant fled the scene. Although he claimed he went to the apartment to check on his son, he never did so, even though his son was in the front seat of the van.

Appellant's account of the incident at trial also differed markedly from his statement to police the day following the shooting. In his statement he did not mention that the victim shoved him, they had an argument, or she told him to "go screw" himself.

A resident at the apartment complex, Becky Reno, testified she witnessed the shooting. Reno was asleep in her second floor efficiency apartment. She had left her glass door open with the screen door closed. About 10:00 or 10:30 p.m., she was awakened by the sound of a car door slamming. When she went to close her sliding glass door, she saw appellant and Watts surreptitiously approaching the van. Selena was at the driver's door of the van. Spradling was not with her. Appellant approached the back of the van and yelled, "[Y]ou fucking who'e." He then shot Selena twice from a distance of a few feet. After witnessing the first two shots, Reno called 911. While on the phone, she heard several more gun shots fired in succession. She then ran down the stairs to the parking lot, heard a child screaming, and saw appellant running from the scene.

Spradling also testified. According to Spradling, appellant had followed him and Selena on several occasions. Spradling had been fishing with Selena and Charles the day of the shooting. They came back to his apartment about 10:00 p.m. and unloaded some equipment. At the time of the shooting, Selena had left his apartment to return home. Spradling went outside to check his mail a few minutes after Selena left. While he was outside he heard two gun shots, followed by a pause, and then several more shots.

Police investigators testified they found two shell casings inside the van and four outside. According to the medical examiner, the victim was shot seven times. The shots were fired from different ranges, with most of the shots ranging from about four feet to less than a foot. One of the wounds was a contact range shot, meaning the muzzle of the gun was in contact with the victim's body.

Watts' sister, Angela Dennington, also testified. About an hour after the shooting, appellant called her and asked, "[I]s the bitch dead yet?"

On the basis of the evidence, we cannot say the jury's failure to find that appellant acted with sudden passion arising from an adequate cause was against the great weight and preponderance of the evidence. First, the jury could have concluded adequate cause was lacking. Appellant was aware of his wife's affairs generally, and with Spradling specifically, for some time, allowing him adequate time for cool reflection. His dispute with Selena over her care of Charles also was not a new occurrence. Further, the drive to the apartment gave appellant time for calm reflection over any neglect of Charles that particular evening. While appellant testified he was upset and angry from a culmination of events, such emotion does not rise to the level of adequate cause. *See, e.g., Mason v. State*, 798 S.W.2d 854, 856 (Tex.App.—Houston [14th Dist.] 1990, no pet.).

Further, the jury could have found appellant provoked the confrontation. Selena's belligerent reaction was a foreseeable response to being tracked down at night by her estranged husband. Having provoked the incident that allegedly inflamed his passions, appellant cannot claim his conduct arose from adequate cause. *See Nance*, 807 S.W.2d at 861; *see also Gonzales v. State*, 942 S.W.2d 80, 84 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd).

The jury also could have concluded appellant failed to demonstrate sudden passion. According to Grigson, two primary factors led to appellant's actions: (1) Selena's alleged neglect of Charles, and (2) her association with "weird" people. These matters, however, arose long before the shooting; therefore, they did not directly provoke the shooting. Grigson in fact testified that the immediate precipitating influences began Christmas Eve, more than two months before the shooting. Two months is adequate time for cool reflection.

The only immediate cause to which Grigson testified was Selena's alleged belligerent reaction when appellant confronted her at the van. As we have already discussed, even assuming the confrontation at the van occurred as appellant contends, the jury could have found it was insufficient provocation to establish adequate cause.

Moreover, the events at the van were disputed, and the jury was free to reject appellant's version of events. Appellant's testimony was inconsistent and riddled with memory lapses. He was unable to provide the jury with any explanation for why he approached Selena with a loaded gun if, as he claimed at trial, he "wasn't gonna bother nobody." He further professed not to remember seeing his son sitting in the van screaming hysterically, even though appellant claims he went to the apartment for the sole purpose of checking on his son. Appellant also did not deny he called Watts' sister to ask, "Is the bitch dead yet?" He claimed only he could not remember whether he did so.

The jury could have concluded from the evidence that appellant went to Spradling's apartment intending to kill Selena and he did so without remorse. There was evidence that appellant surprised Selena, yelled an obscenity at her, and shot her without provocation. Further, from the evidence the jury could conclude appellant did not mindlessly continue to pull the trigger in some sort of uncontrollable rage. The evidence showed he initially shot his victim twice from a distance of a few feet. He then paused, approached closer, and fired repeatedly. Eventually he placed the muzzle of the gun directly against Selena's body, and firing directly into her chest. He then fled the scene and later called an acquaintance to see if Selena was dead, with no apparent remorse.

Where the testimonial evidence is, as here, conflicting and requires an evaluation of demeanor and credibility of witnesses, the jury is the final judge of the weight of the evidence. *Cain,* 958 S.W.2d at 408–09. We do not on appeal disturb the jury's credibility determinations. *Id.* A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Id.* at 410.

Having reviewed the entire record, we cannot conclude that the jury's failure to find sudden passion is so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule appellant's sole point of error and affirm the judgment of the trial court.