Opinion issued October 30, 2003
     










In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01031-CR




JASON MICHAEL HERNANDEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 892870




O P I N I O N
          A jury convicted appellant, Jason Michael Hernandez, of murder and assessed
his punishment at 60 years in prison. See Tex. Pen. Code Ann. § 19.02(b)(1), (2)
(Vernon 2003). We determine (1) whether the evidence supporting the jury’s
negative finding on a sudden-passion special issue at punishment was factually
sufficient, (2) whether appellant carried his burden of showing that his counsel was
ineffective at the guilt phase, and (3) whether the trial court committed reversible
error in preventing appellant’s psychologist from giving expert-opinion testimony
relating to the sudden-passion issue. We affirm.
Background
          Appellant and Cynthia Cruz, the complainant, had been dating for several
months. To celebrate having moved into a new apartment together, they had a party. 
Late that night, appellant, his uncle, and his cousin got into a fight at the party. 
Someone called for an ambulance when the cousin got out of control. Cruz
accompanied the cousin to the emergency room in the ambulance. Appellant
appeared somewhat intoxicated, angry, and belligerent, but he became “really . . .
angry” and “very upset” when Cruz went with his cousin in the ambulance, so much
so that an officer had to tell him to calm down.
          Appellant called the police again around five o’clock the next morning. When
investigating officers arrived at appellant’s apartment, they found Cruz’s corpse
against the bathtub. She had been stabbed or cut 21 times and had evidence of blunt-force trauma to her head. Appellant had soaked her body in so much bleach that the
odor permeated the apartment.
 
Factual Sufficiency
          In issue one, appellant raises a factual-sufficiency challenge to the jury’s
negative answer to the sudden-passion special issue in the punishment charge. 
          Murder is a first-degree felony. See Tex. Pen. Code Ann. § 19.02(c). 
However, “at the punishment stage of a trial, the defendant may raise the issue as to
whether he caused the death under the immediate influence of sudden passion arising
from an adequate cause. If the defendant proves the issue in the affirmative by a
preponderance of the evidence, the offense is a felony of the second degree.”


 See id.
§ 19.02(d) (Vernon 2003). “‘Sudden passion’ means passion directly caused by and
arising out of provocation by the individual killed or another acting with the person
killed which passion arises at the time of the offense and is not solely the result of
former provocation.” Id. § 19.02(a)(2) (Vernon 2003). “‘Adequate cause’ means
cause that would commonly produce a degree of anger, rage, resentment, or terror in
a person of ordinary temper, sufficient to render the mind incapable of cool
reflection.” Id. § 19.02(a)(1) (Vernon 2003). Ordinary anger or causes of a
defendant’s own making are not legally adequate causes. Naasz v. State, 974 S.W.2d
418, 423 (Tex. App.—Dallas 1998, pet. ref’d).
          Both parties assert that we may conduct a factual-sufficiency review of the
evidence underlying the jury’s negative finding on sudden passion. Neither this
Court nor the Court of Criminal Appeals has yet determined whether factual-sufficiency review is available for this particular punishment issue. However, some
of our sister courts of appeals have generally held that such review lies.


 We agree
with the courts that have so held for the reasons that they have expressed:
●The sudden-passion punishment finding concerns issues of
historical fact, rather than issues that are more subjective or that
constitute a prediction.
 
●Factual-sufficiency review lies to challenge the rejection of an
affirmative defense, and the rejection of a sudden-passion
mitigation issue at punishment is analogous to the rejection of an
affirmative defense at the guilt phase because the burden of proof
for both issues rests on the defendant by a preponderance of the
evidence.

See Smith v. State, 2000 WL 108136 at *5-6 (Tex. App.—Texarkana Feb. 1, 2000,
pet. ref’d) (not designated for publication); Naasz, 974 S.W.2d at 421, 423; see also
Wilson v. State, 15 S.W.3d 544, 549 n.4 (Tex. App.—Dallas 1999, pet. ref’d)
(dictum).
          Moreover, the Court of Criminal Appeals has recently held that factual-sufficiency review lies over the“deliberateness” punishment issue


 in capital cases for
offenses committed before September 1, 1991 because that issue involves “an
assessment of events that have already occurred” and requires “a finding of historical
fact that is either right or wrong at the time of trial.” See Wardrip v. State, 56 S.W.3d
588, 590-91 (Tex. Crim. App. 2001). Compare McGinn v. State, 961 S.W.2d 161,
168-69 (Tex. Crim. App. 1998) (holding that future-dangerousness punishment issue
in capital case is not subject to factual-sufficiency review because, among other
reasons, that issue is one of prediction, not historical fact, and is thus highly
subjective). And this Court has recently held that the rejection of a similar
punishment mitigation issue, on which the defendant also has the burden of proof by
a preponderance of the evidence, is reviewable for factual sufficiency. See Patterson
v. State, Nos. 01-00-01148-CR, 01-00-01149-CR, slip op. at 4-5 (Tex.
App.—Houston [1st Dist.] June 19, 2003, no pet. h.) (op. on remand; designated for
publication) (reviewing for factual sufficiency jury’s negative finding on punishment
mitigation issue, which would have reduced offense to second-degree felony under
Tex. Pen. Code Ann. § 20.04(d) (Vernon 2003), asking whether defendant had
voluntarily released kidnaping victim in safe place). Accordingly, we hold that we
may conduct a factual-sufficiency review of the evidence relevant to the sudden-passion mitigation finding.
          When determining the factual sufficiency of the evidence, we review all of the
evidence neutrally. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The
defendant bears the burden of proving both a sudden-passion issue at punishment and
an affirmative-defense issue at guilt by a preponderance of the evidence. See Tex.
Pen. Code Ann. § 2.04(d) (Vernon 2003) (affirmative-defense burden); id. §
19.02(d) (sudden-passion burden). Because the defendant’s burden is the same for
both issues, we apply to appellant’s challenge of the sudden-passion finding the same
standard of review that we would apply to a challenge of the rejection of an
affirmative defense. See Naasz, 974 S.W.2d at 421. That standard requires us to
determine whether the negative finding is so against the great weight and
preponderance of the evidence as to be clearly wrong or manifestly unjust. See id. at
421-22; see also Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)
(designating same standard of review for factfinder’s rejection of affirmative defense
at guilt phase). The factfinder is the sole judge of the weight and credibility of
witnesses’ testimony. Johnson, 23 S.W.3d at 7.
          Appellant relies on the following evidence for his factual-sufficiency
challenge. Appellant’s evidence showed that, in general, Cruz suffered from
depression and bipolarism; that she sometimes did not take her medication for these
disorders or mixed that medication with alcohol; that she had been hospitalized for
depression and drug-related illness; that she “had a lot of problems with her past and
her children”; and that she lied to, argued with, and “used” appellant and his family. 
Relevant to the attack, appellant testified that he felt like he was “in a nightmare”
during the attack, that he passed out right after the stabbing, and that he didn’t
remember stabbing her so many times or dousing her in bleach. Appellant further
testified that, right before the murder, Cruz woke him by kicking and slapping him,
that he and Cruz argued, that she challenged his masculinity, that she criticized the
size of his penis, and that she said that she would leave him for another man—all of
which made appellant “even more angry” and “very hurt” and which caused
“something just [to come] out of me.” Appellant’s mother testified that Cruz seemed
depressed and angry on the morning of the murder.
          Some of the testimony on which appellant relies concerned his past experiences
with Cruz, and the State produced ample contrary evidence, some from appellant
himself, that he acted on past provocation.


 Sudden passion must arise at the time of
the offense and cannot result solely from former provocation.


 See Tex. Pen. Code
Ann. § 19.02(a)(2). Appellant further testified that, when he killed Cruz, he was also
thinking about how other people had disrespected or abused him in the past. 
Provocation by people other than the victim or one acting with her does not meet the
definition of sudden passion. See id. To the extent that appellant’s testimony
concerned his mental state at the time of the stabbing, there was ample evidence that,
if believed, would support the jury’s finding that appellant did not act under sudden
passion.


 Moreover, causes that would not render the ordinary person’s mind
incapable of cool reflection do not constitute adequate cause. See id. at § 19.02(a)(1). 
In this vein, appellant acknowledged that couples sometimes break up because one
partner wishes to date someone else and that that is normal and is not a reason to kill. 
Additionally, given appellant’s changing story about the circumstances of the killing,



the jury could have disbelieved appellant’s testimony that Cruz had incited him to
more than ordinary anger. See Naasz, 974 S.W.2d at 423 (stating that mere anger
does not constitute adequate cause); Dudley v. State, 992 S.W.2d 565, 569 (Tex.
App.—Texarkana 1999, no pet.) (in overruling factual-sufficiency challenge to
finding on sudden-passion issue, noting, “Given the conflicting testimony involved
and that the jury is the sole judge of the weight and credibility of the evidence, there
is plenty of room to disbelieve [the defendant’s] version of the facts and to believe
[another witness’s] version.”).
          Accordingly, we hold that the jury’s answer to the sudden-passion special issue
is not so against the great weight and preponderance of the evidence as to be
manifestly unjust or clearly wrong.
          We overrule issue one.
Ineffective Assistance of Counsel
          In issue four, appellant argues that, at the guilt phase, his trial counsel was
ineffective under the Federal Constitution for not objecting to the State’s asking a
detective whether appellant’s first recorded statement was entirely truthful. See U.S.
Const. amend. VI.
          The standard of review for evaluating claims of ineffective assistance of
counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687-96, 104 S. Ct.
2052, 2064-69 (1984). See Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999) (applying
Strickland standard at punishment phase of non-capital trial). Appellant must show
both that (1) counsel’s performance was so deficient that he was not functioning as
acceptable counsel under the Sixth Amendment and (2) there is a reasonable
probability that, but for counsel’s error or omission, the result of the proceedings
would have been different, i.e., sufficient to undermine confidence in the outcome. 
Strickland, 466 U.S. at 687-96, 104 S. Ct. at 2064-69. Effective assistance of counsel
does not mean errorless counsel. See Saylor v. State, 660 S.W.2d 822, 824 (Tex.
Crim. App. 1983). In determining whether counsel was ineffective, we consider the
totality of the circumstances of the particular case. Thompson, 9 S.W.3d at 813.
          It is the defendant’s burden to prove ineffective assistance of counsel by a
preponderance of the evidence. Thompson, 9 S.W.3d at 813. A defendant must
overcome the presumption that, under the circumstances, the challenged action might
be considered sound trial strategy. Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.—Houston [1st Dist.] 1996, no pet.). Assertions of ineffective assistance of
counsel must be firmly founded in the record. Bone v. State, 77 S.W.3d 828, 835
(Tex. Crim. App. 2002). We will normally not speculate to find trial counsel
ineffective when the record is silent on counsel’s reasoning or strategy. See
Henderson v. State, 29 S.W.3d 616, 624 (Tex. App.—Houston [1st Dist.] 2000, pet.
ref’d); Gamble, 916 S.W.2d at 93. However, “in the rare case where the record on
direct appeal is sufficient to prove that counsel’s performance was deficient, an
appellate court should obviously address the claim . . . .” Robinson v. State, 16
S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).
          Houston Police Department Homicide Detective Abbondandolo testified that,
on the morning of the murder, he observed no defensive wounds on appellant and that
appellant “was [not] rumpled or messed up at all.” At the scene, appellant appeared
surprised when he learned that Cruz was dead and told the detective that, after Cruz
had left the apartment the night before, he had fallen asleep and later awakened to
find Cruz’s body in the bathroom. The detective recorded a statement by appellant
later that morning. In that statement, appellant recounted that Cruz had awakened
him when she returned from the hospital; that Cruz had struck and kicked him
repeatedly; that Cruz had attacked him with a butcher knife; that they had fought and
struggled while she had the knife; that he had eventually gotten the knife from her,
but that she had then tried to attack him with a fork;


 that he had stabbed her two to
four times with the knife,


 and that he was wearing the same clothes that he had worn
during the stabbing. After having published appellant’s recorded statement to the
jury, the detective again testified that the few marks on appellant’s body were not the
type that the detective would have expected to see on someone who had been
defending himself or struggling for his life. The State then asked, “Based on your
observations of the defendant’s demeanor, did you make a determination as to
whether the entire story that the defendant told you in [the first recorded statement]
was true and correct?” Detective Abbondandolo answered that he did not think that
the recorded statement was true and correct.


 Counsel did not object.
          Counsel’s not objecting to the detective’s answer could have resulted from
valid trial strategy, and we presume that it was unless the record shows otherwise. 
See Gamble, 916 S.W.2d at 93. Nothing shows trial counsel’s reasons for not
objecting.


 This is not one of those “rare cases” in which we can assess counsel’s
performance on a silent record. See Robinson, 16 S.W.3d at 813 n.7. We hold that
appellant did not carry his burden of showing that counsel was ineffective for not
objecting to the detective’s testimony. See Henderson, 29 S.W.3d at 624; Gamble,
916 S.W.2d at 93. 
          We overrule issue four.
Appellant’s Expert Witness
          In issues two and three, appellant argues that the trial court erred in refusing
to allow his psychiatric expert, Dr. Milton Altschuler, to testify at the punishment
phase (1) about appellant’s mental state at the time of the killing, in support of
appellant’s sudden-passion issue, and (2) about appellant’s alleged disassociative
disorder, in support of appellant’s sudden-passion issue and to explain appellant’s
behavior after the killing.
A.      Waiver
          The State claims that appellant waived these challenges because he allegedly
(1) did not obtain a ruling excluding the doctor’s testimony, then voluntarily
withdrew the doctor’s testimony, and (2) made no offer of proof showing that the
doctor would have testified to these two things. 
          1.       Dr. Altschuler’s expert opinion concerning appellant’s mental state
at the time of the murder

          To preserve error in the exclusion of evidence, a party must make a sufficient
offer of proof and obtain a ruling. See Tex. R. App. P. 33.1(a)(1)(A), (B); Tex. R.
Evid.103(a)(2), (b). The proponent’s burden is to ensure that “the substance of the
evidence was made known to the court by offer, or was apparent from the context
within which questions were asked.” Tex. R. Evid. 103(a)(2). 
          During the punishment phase, the State asked to question Dr. Altschuler
outside the jury’s presence because, although appellant had designated the doctor as
an expert witness, appellant had not disclosed the substance of the doctor’s testimony. 
The parties and the trial court then discussed Dr. Altschuler’s testimony for 30 pages
of the record. During that hearing, Dr. Altschuler testified that he believed that
appellant had a disassociative or psychiatric disorder. Contrary to the State’s
assertion, everyone understood that appellant wished Dr. Altschuler to testify, in
support of the sudden-passion special issue, about appellant’s state of mind at the
time of the murder and about how appellant’s disassociative or psychiatric disorder
had affected his mental state at that time.



          Appellant also obtained a ruling. The State wished to exclude Dr. Altschuler’s
testimony entirely. The trial court denied that blanket request, instead ruling that
appellant could call Dr. Altschuler for “whatever purpose” that he wished—subject
to one important exception, which the State does not mention—and that the State
could object and obtain rulings during testimony before the jury.


 The important
exception was that the trial court would not allow Dr. Altschuler to testify about
appellant’s state of mind. The trial court repeatedly indicated that it was presently
ruling that this line of testimony was prohibited. Accordingly, that ruling was not
part of the trial court’s general in limine ruling, and the court’s ruling prohibiting
testimony on appellant’s mental state thus sufficed to preserve error. Compare
Wilkerson v. State, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994) (holding that ruling
on pretrial motion in limine does not preserve error) with Tex. R. App. P.
33.1(a)(2)(A) (requiring for preservation that court “[rule] on the request, objection,
or motion, either expressly or implicitly . . . .”).
          And appellant did not waive that ruling by then deciding not to present Dr.
Altschuler’s testimony. It was apparently because the trial court had ruled that
appellant could not call the doctor to testify on appellant’s mental state at the time of
the murder that appellant decided to take the stand to give evidence on this topic, with
the doctor staying on as only a consulting expert. Accordingly, appellant did not
waive the trial court’s ruling excluding the doctor’s testimony on this ground.
          2.       Dr. Altschuler’s expert opinion concerning how appellant’s
disassociative disorder affected appellant’s behavior after the
murder

          In contrast, appellant never mentioned during the voir dire hearing that Dr.
Altschuler would have testified about how appellant’s disassociative disorder
accounted for appellant’s behavior after the killing.


 Therefore, appellant waived
any argument that the trial court erred in excluding Dr. Altschuler’s expert opinion
concerning how appellant’s disassociative disorder affected appellant’s behavior after
the murder. See Tex. R. App. P. 33.1(a)(1)(A), (B); Tex. R. Evid.103(a)(2).
B.      Merits
          At the hearing, the trial court expressed four areas of concern: (1) the court was
unsure exactly to what Dr. Altschuler would testify as an expert;


 (2) the doctor’s
testimony was a way of presenting appellant’s own self-serving statements without
appellant’s taking the stand; (3) the trial court suspected that an expert could not
testify about a defendant’s state of mind; and (4) appellant had to show that the
doctor’s expert testimony was reliable under the factors of Daubert


 and Kelly.


 We
need to discuss only the last ground: reliability of the doctor’s expert testimony.
          The State did not contest Dr. Altschuler’s credentials as a psychiatrist. Neither
did the trial court. Rather, the trial court repeatedly asserted that appellant had to
show that Dr. Altschuler’s expert opinion was reliable under the standards adopted
in Kelly and Daubert. Appellant not only did not object to the application of Kelly
and Daubert, but assumed that those standards applied and tried to prove up what he
believed those standards to be.



          We review the trial court’s decision on the qualifications of an expert or the
reliability of his testimony for an abuse of discretion. See Hernandez v. State, 53
S.W.3d 742, 750 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). An expert may
testify on scientific, technical, or other specialized subjects if the testimony would
assist the factfinder in understanding the evidence or determining a fact issue. See
Tex. R. Evid. 702. The trial court may exclude scientific testimony or evidence that
is not reliable. See id. 
          “[E]vidence derived from a scientific theory, to be considered reliable, must
satisfy three criteria in any particular case: (a) the underlying scientific theory must
be valid; (b) the technique applying the theory must be valid; and (c) the technique
must have been properly applied on the occasion in question.” Kelly v. State, 824
S.W.2d 568, 573 (Tex. Crim. App. 1992); see also Hartman v. State, 946 S.W.2d 60,
62-63 (Tex. Crim. App. 1997) (applying Kelly standard to all scientific evidence,
whether novel or not, that is offered under Tex. R. Evid. 702). “Factors that could
affect a trial court’s determination of reliability include, but are not limited to, the
following: (1) the extent to which the underlying scientific theory and technique are
accepted as valid by the relevant scientific community, if such a community can be
ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of
literature supporting or rejecting the underlying scientific theory and technique; (4)
the potential rate of error of the technique; (5) the availability of other experts to test
and evaluate the technique; (6) the clarity with which the underlying scientific theory
and technique can be explained to the court; and (7) the experience and skill of the
person(s) who applied the technique on the occasion in question.” Kelly, 824 S.W.2d
at 573 (original emphasis removed). The Kelly inquiry is “substantively identical to
the inquiry mandated by the Supreme Court . . . in Daubert . . . .” Nenno v. State, 970
S.W.2d 549, 560 (Tex. Crim. App.1998), overruled on other grounds by State v.
Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). Appellant had the burden to
show the trial court that Dr. Altschuler’s testimony was reliable. See Kelly, 824
S.W.2d at 573.
          The parties raised, and the trial court was clearly concerned about, the
reliability of the doctor’s expert opinion; accordingly, on appeal, appellant must
challenge this possible basis for the trial court’s ruling. However, other than
mentioning that the trial court raised the Daubert issue at the hearing, appellant does
not include argument in his brief on the propriety of excluding Dr. Altschuler’s
testimony under Daubert or Kelly.


 The only case discussing Kelly or its progeny
that appellant cites is Muhammed v. State, 46 S.W.3d 493, 506-09 (Tex. App.—El
Paso 2001, no pet.). In addition to discussing reliability under Kelly, however, the
Muhammed court also separately discussed relevancy under Code of Criminal
Procedure article 37.07, section 3(a). See Muhammed, 46 S.W.3d at 498-99, 500-02;
see also Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp. 2003). Both
of these holdings of Muhammed are relevant to what the trial court discussed at the
voir dire hearing in this case. However, it is unclear from appellant’s brief for which
holding he cites Muhammed, and, if anything, he appears not to rely on Muhammed’s
Kelly holding.



          Even were we to construe appellant’s reference to Muhammed to assert a
challenge under Kelly, we would overrule that challenge. After having assumed the
burden to prove reliability under the standards announced in Kelly and Daubert,
appellant had Dr. Altschuler testify mainly to his credentials, which no one contested. 
Other than that, the record showed that Dr. Altschuler had testified occasionally for
the State, for criminal defendants, and for civil plaintiffs and that he had based his
opinion in this case on “reasonable medical probability”; “historical data”;
“mainstream psychiatry which talks about [appellant’s] home history in various
symptoms and issues that occur”; and the “DSM-IV study” on disassociative
disorders, which study is “very much within mainstream psychology” and is “well
recognized.” However, the doctor had generated no written report, and, other than
briefly mentioning that he had applied the DSM-IV, he did not explain on what other
“mainstream psychiatry” studies or techniques he relied, how he had applied those
studies or techniques to appellant. Likewise, the doctor did not identify the
“historical data” on which he based his opinion concerning appellant’s mental state.


 
On this record, we hold that the trial court did not abuse its discretion in excluding
Dr. Altschuler’s testimony. Muhammed is distinguishable because, in that case, the
proffered expert testified specifically on voir dire as to which tests he applied, what
the defendant’s results were under those tests, and what conclusions he drew from
those tests. See id., 46 S.W.3d at 497, 506.
          We overrule issues two and three.
Conclusion
          We affirm the judgment of the trial court.
 

 
Tim Taft
Justice
Panel consists of Justices Taft, Jennings, and Hanks.
Publish. Tex. R. App. P. 47.2(b).