**Opinion filed October 23, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00125-CR

_____

## KAY IRA WATTS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 195th District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-11-00552-N**

### M E M O R A N D U M   O P I N I O N

Kay Ira Watts appeals his jury conviction of murder.[1]  The jury assessed Appellant's punishment at confinement for ninety-nine years with no fine.  The trial court sentenced Appellant accordingly.  We affirm.

### I. *Evidence at Trial*

The grand jury indicted Appellant for the offense of capital murder.  The indictment alleged that, on or about June 7, 2011, Appellant intentionally caused

---

[1]*See* TEX. PENAL CODE ANN. § 19.02 (West 2011).

the death of Jacorey Wilkerson by stabbing and cutting him with a knife and that Appellant was then and there in the course of committing and attempting to commit a robbery of Wilkerson. Appellant pleaded not guilty to the charge, and the case proceeded to trial. The jury convicted Appellant of the lesser offense of murder.

Detective Garrick Whaley of the Dallas County Sheriff's Office testified that, on June 8, 2011, he was called to investigate a body, which he determined was Wilkerson, that was found beside the house at 705 Priscilla Lane in DeSoto. Once Detective Whaley arrived at the scene, he observed a bloodstain on the driveway near Wilkerson's body. Given that the stain was white in the middle and that the area surrounding the stain smelled like bleach, Detective Whaley believed that someone had poured bleach on the driveway in an attempt to remove the blood. A broken knife was found in the storm drain behind the house.

Detective Lorenzo Garza of the DeSoto Police Department testified that, during his investigation of Wilkerson's death, he executed a search warrant at Appellant's house. Inside Appellant's bedroom, Detective Garza found clothes with what appeared to be bleach and bloodstains on them and $93 in cash that appeared to have blood on it.

Detective Warren Tillman of the DeSoto Police Department testified that he went to Appellant's house after he learned that Appellant had been with Wilkerson on the night of Wilkerson's death. After Detective Tillman made contact with Appellant, Appellant agreed to come to the police station in order to provide more information. Appellant's interview at the police station was recorded, and relevant portions of the recording were played for the jury.

During the course of Appellant's interview with the police, he changed his story multiple times. Appellant identified Wilkerson as his drug dealer but initially

denied involvement in Wilkerson's death. Nine hours after Appellant began speaking with the police, he admitted that he killed Wilkerson.

Appellant stated that he became angry when Wilkerson refused to give him a discount on his drug purchase. Appellant pushed Wilkerson after Wilkerson made several derogatory comments to him. Wilkerson pushed Appellant in return, and they began fighting. Wilkerson pushed Appellant onto the ground, and Appellant picked up a knife that somebody had earlier thrown outside. Appellant stabbed Wilkerson with the knife approximately thirteen times, and Wilkerson slumped over. Appellant then moved Wilkerson's body to the location where it was later found.

Before Appellant left the scene, he took money and pills that had fallen out of Wilkerson's pockets and threw the knife down a nearby storm drain. Appellant later returned to where he left Wilkerson's body and attempted to clean up the area with bleach.

Dr. Chester Gwin testified that he performed an autopsy on Wilkerson and found ten stab wounds and two incised wounds.[2] Dr. Gwin concluded that Wilkerson received fatal stab wounds to his heart, left lung, and stomach.

## II. *Issues Presented*

Appellant presents two issues on sufficiency of the evidence. Appellant asserts in his first issue that the evidence is insufficient to support the jury's implied rejection of his self-defense claim. His second issue is that the evidence is insufficient to support the jury's finding against him on the issue of sudden passion.

---

[2]Dr. Gwin explained that a "stab wound" is deeper than it is long and that an "incised wound" is just the opposite.

III. *Standards of Review*

The issue of self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). Thus, as when reviewing the sufficiency of the evidence to support a conviction, we review the sufficiency of the evidence to support a jury's rejection of a defendant's self-defense theory by examining all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Id.* at 914 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)); *see also Isassi v. State*, 330 S.W.3d 633, 638–39 (Tex. Crim. App. 2010); *Brooks v. State*, 323 S.W.3d 893, 899–903 (Tex. Crim. App. 2010).

Sudden passion is a punishment issue that, like an affirmative defense, must be proved by the defendant by a preponderance of the evidence. PENAL § 19.02(d); *see id.* § 2.04; *Jackson v. State*, 160 S.W.3d 568, 573 n.3 (Tex. Crim. App. 2005) (noting that legislature had made sudden passion a punishment issue instead of an affirmative defense to the crime). Because of the defendant's burden of proof, and even after *Brooks*, we may review an affirmative defense and the issue of sudden passion for both legal and factual sufficiency. *Matlock v. State*, 392 S.W.3d 662, 667 & n.14 (Tex. Crim. App. 2013). A challenge to the legal sufficiency of the evidence in support of a jury's rejection of an issue on which the defendant had the burden of proof by a preponderance of the evidence is construed as an assertion that the contrary was established as a matter of law. *Id.* at 669. When presented with such an issue on appeal, we must first search the record for evidence favorable to the finding, and in doing so, we must disregard all contrary evidence unless a reasonable factfinder could not. *Id.* If no evidence supports the finding,

4

we must then determine whether the contrary was established as a matter of law. *Id.* To review the factual sufficiency of the evidence in support of a jury's rejection of an issue on which the defendant had the burden of proof by a preponderance of the evidence, we review all of the evidence in a neutral light and determine whether the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* at 670–71; *Meraz v. State*, 785 S.W.2d 146, 154 (Tex. Crim. App. 1990).

IV. *Analysis*

A. *Self-Defense*

Appellant admitted that he killed Wilkerson, but he claimed that he did so in self-defense. Wilkerson died as a result of the stab wounds inflicted by Appellant. A person commits murder if he intentionally or knowingly causes the death of an individual. PENAL § 19.02(b)(1).

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). Intent may be proved by any facts that tend to prove its existence or through circumstantial evidence surrounding the crime. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). The jury may infer intent from the acts, words, and conduct of the defendant; from the method used to commit the crime; and from the nature of the wounds inflicted on the victim. *Id.* A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. PENAL § 6.03(b).

Section 9.32 of the Texas Penal Code provides that a person is justified in using deadly force against another (1) if he would be justified in using force under Section 9.31 and (2) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. PENAL §§ 9.31, 9.32(a)(1), (a)(2)(A). A

5

reasonable belief is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42) (West Supp. 2014). The use of force is not justified in response to verbal provocation alone, nor is the use of force justified if the actor provoked the other's use or attempted use of unlawful force. *Id.* § 9.31(b)(l), (b)(4).

The defendant has the burden to produce some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). When a defendant produces such evidence, the burden shifts to the State to rebut the defendant's claim by proving its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913. The State is not required to affirmatively produce evidence to refute a claim of self-defense but is required to prove its case beyond a reasonable doubt. *Id.* at 913.

The only evidence adduced that related to Appellant's claim of self-defense was his own interview with the police. In the interview, Appellant claimed that his killing of Wilkerson "was more of a self-defense because [he] thought [Wilkerson] was going to start f-----g [him] up." Appellant admitted to the police that he pushed Wilkerson first and that he did so as a result of verbal provocation. Referring to Wilkerson, Appellant stated that he "probably wouldn't even have stabbed him if he wasn't talking that stuff to me." Therefore, based on Appellant's own admissions, his use of deadly force against Wilkerson was not justified. *See* PENAL § 9.31(b)(1), (b)(4).

Furthermore, the State refuted Appellant's claim of self-defense by proving the elements of the offense of murder beyond a reasonable doubt. *See Hart*, 89 S.W.3d at 64. The evidence showed that Appellant stabbed Wilkerson approximately thirteen times and that Appellant's actions pierced several of Wilkerson's vital organs. Appellant then took money and drugs from Wilkerson and attempted to hide his body and the knife Appellant used to kill him. Appellant

6

later returned to the scene and attempted to clean Wilkerson's blood off the pavement with bleach.

The jury was free to believe or disbelieve Appellant's testimony and his version of events. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (stating that the jury is the exclusive finder of fact and the sole judge of the weight and credibility of the evidence). For nine hours at the police station, Appellant claimed that he had nothing to do with Wilkerson's death, and during those nine hours, Appellant gave the police a number of fabricated stories. Appellant only admitted to killing Wilkerson after the police presented him with evidence that linked him to the murder scene. Given Appellant's inconsistent statements, the jury could have rationally regarded Appellant's claim of self-defense as merely an attempt to escape responsibility for his actions. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (stating that the factfinder may choose to believe or disbelieve any or all of a witness's testimony).

We conclude that the evidence was sufficient to support the jury's verdict and the jury's rejection of Appellant's claim of self-defense. Appellant did not establish that he acted in self-defense, and the State adduced sufficient evidence from which a rational trier of fact could have found, beyond a reasonable doubt, all of the elements of murder and also could have found against Appellant on the self-defense issue beyond a reasonable doubt. We overrule Appellant's first issue.

*B. Sudden Passion*

Appellant claims that, when he killed Wilkerson, he was influenced by sudden passion that arose after Wilkerson "talked trash" to him. Sudden passion is a mitigating circumstance that, if found by the jury to have been proven by a preponderance of the evidence, reduces the offense of murder from a first-degree felony to a second-degree felony. PENAL § 19.02(c), (d). At the punishment phase of trial, a defendant may raise the issue of sudden passion; the defendant has the

burden to prove that he caused the death under the immediate influence of sudden passion that arose from an "adequate cause." *Id.* § 19.02(d); *see Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex. Crim. App. 2000). "Adequate cause" refers to cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. PENAL § 19.02(a)(1); *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013); *Naasz v. State*, 974 S.W.2d 418, 423–24 (Tex. App.—Dallas 1998, pet. ref'd).

In order for a jury to make an affirmative finding on the issue of sudden passion, the record must contain objective evidence that direct provocation by the victim occurred at the time of the killing. *Naasz*, 974 S.W.2d at 423–24. The record must also contain evidence from which the jury could subjectively decide that the accused killed the victim while in an excited and agitated state of mind arising out of the direct provocation. *Id.* at 424.

Appellant admitted that he started a fight with Wilkerson after Wilkerson refused to give him a discount on his drug purchase and started calling him derogatory names. Because Appellant precipitated the confrontation that led to Wilkerson's death, the jury was free to reject Appellant's claim of sudden passion. *See Smith v. State*, 355 S.W.3d 138, 149 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("A defendant may not rely on a cause of his own making, such as precipitating a confrontation, to support his argument that he acted out of sudden passion arising from adequate cause."); *Naasz*, 974 S.W.2d at 425 (finding that the defendant was not entitled to claim that he acted in sudden passion because the evidence showed that he provoked the incident that allegedly inflamed his passions).

Appellant's own appraisal of the situation revealed that he had time to reflect before he decided to stab Wilkerson. Appellant explained to police that he

8

stabbed Wilkerson because "he was f-----g me up so I . . . needed to do something back." Based on Appellant's statement, the jury, who as the trier of fact evaluated the evidence adduced at trial, was permitted to reject sudden passion. *See Daniels v. State*, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983) (finding sudden passion inapplicable because the defendant admitted that he had full control of himself when he shot the decedent and that he made a purposeful choice to do so). The jury's rejection of sudden passion was supported by the evidence and was not so against the great weight and preponderance of the evidence as to be manifestly unjust. We hold that there was legally and factually sufficient evidence for the jury to have evaluated and rejected Appellant's defensive claim of sudden passion. We overrule Appellant's second issue.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

October 23, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.