NUMBER 13-03-00081-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


DUSTIN JOHN LOWRY, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 404th District Court of Cameron County, Texas.

 

 

MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Baird (1)


Memorandum Opinion by Chief Justice Valdez



 Appellant, Dustin John Lowry, was convicted by a jury of murder and aggravated
assault. He was sentenced in accordance with the verdict to thirty-five years and two
years, respectively. Appellant raises twelve issues on appeal. We affirm the judgment of
the trial court.

I. Background


 This matter arises from a brawl on the beach which resulted in the fatal stabbing of
Jesus Espinosa. During spring break of 2002, appellant was at the beach with his friends,
Samuel Garcia, Brent Vaughn, Robert Ruf, and John Narvaez. While Narvaez was away
from the group, the others began roughhousing or fighting amongst themselves. Ruf had
left his video camera on the sand some distance away from the group. At trial, witnesses
testified that this distance ranged from three feet to thirty yards. 

 Espinosa, the decedent, was also at the beach with his common-law wife, Eneida
Gonzalez, and their friend Ramon Salazar. As they were leaving the beach, they saw the
video camera. Eneida and Salazar testified that they thought the camera had been
abandoned because there was no one near it. They decided to pick up the camera and
take it with them, but return it if anyone claimed it. Eneida and Salazar both testified that
Salazar picked up the video camera, put it in their ice chest, and continued to walk to the
exit. 

 Susan McCrae, who was visiting the beach that day with her family, told appellant's
group that Espinosa, Salazar, and Eneida had taken the video camera. McCrae testified
that she believed that Espinosa, not Salazar, had intentionally stolen the video camera.

 After hearing McCrae's comment, appellant's group rapidly pursued Espinosa,
Salazar, and Eneida. The record contains conflicting testimony regarding what happened
once the parties came together. 

 Eneida and Salazar testified that one of the appellant's party told them it was his
camera and asked for its return. Salazar returned it, and his group continued to leave, at
which point they were attacked from behind. Someone from appellant's party hit Salazar
in the back of the head with the camera, and someone physically ran into Espinosa.

 Witness McCrae testified that appellant's group did not ask for the camera's return,
but instead, physically attacked. She saw one individual from appellant's group jump on
Espinosa. 

 Garcia testified that they went to "confront" Espinosa's group about the alleged theft. 
He testified that they asked if they could look in the ice chest, but Ruf "overran" and ran
into Espinosa, at which point Garcia retrieved the camera from the ice chest and the fight
ensued. 

 Ruf testified that they asked Eneida, Salazar, and Espinosa about the video camera,
and they denied having it. Vaughn then asked if he could look in the ice chest, but when
he went to look, either Espinosa or Salazar hit him.

 Appellant testified that they were "upset" when they ran to confront the decedent's
group. He admitted that he was angry. Garcia asked to look in the chest, did so, and
picked up the camera. According to appellant's testimony, either Salazar or Espinosa hit
Garcia, and Ruf then ran "full speed" into Espinosa, and the fight broke out.

 Witnesses Alberto Ocanas, Roosevelt Alvarado, and Rolando Zapatero all testified
that appellant's group initiated the violence between the parties, and Salazar and Espinosa
were defending themselves. 

 With regard to Espinosa's death, the record shows the following. The evidence was
undisputed that appellant was the only individual involved in the altercation who had a
knife. None of the other members of either group admitted to having weapons, and
witnesses saw no other weapons during the altercation. 

 Appellant admitted that he pulled out his knife and was waving it during the fight, but
testified that he did not recall stabbing Espinosa. He testified that Espinosa began the
fight, swinging and punching at him, and he was scared for his life. Appellant testified that
he lost the knife during the fight. A knife, with Espinosa's blood on it, was found in the
sand after the incident. Appellant identified the knife as his. Detective Jaime Rodriguez
and Ranger Rolando Castaneda testified that the knife was a deadly weapon that was
clearly capable of causing bodily injury or death.

 Ocanas, Alvarado, and Zapatero testified that they saw Espinosa walking backwards
away from an individual who was pursuing him and swinging a knife. According to
Alvarado, Espinosa was gesturing in a placating manner as though to indicate, "I'm sorry." 
Ocanas and Alvarado testified that they heard the pursuer ask Espinosa, "You don't think
I'll do it?" All three witnesses saw Espinosa trip and fall backwards. Alvarado saw the
assailant stab Espinosa in the chest while he was down, and believed he was stabbed
more than once. Zapatero and Ocanas both saw the assailant on top of Espinosa, and
when the assailant got up, they saw that Espinosa had blood on his shirt. Zapatero
identified the assailant as wearing blue windbreaker pants, and it is undisputed that
appellant was the only individual there that was so attired.

 At this point, appellant and others began kicking Espinosa in the head and chest. 

Alvarado testified that he heard the stabber say, "you don't fuck with us, you fucking
thieves." He said that the stabber was almost "celebrating." Eneida testified that appellant
toldl her, "That's what you get for stealing." 

 Both Garcia and Vaughn testified that appellant told them that he had "shanked"
Espinosa. Ruf testified that appellant said, "I had to stick him," but Ruf believed that
appellant meant that he punched Espinosa.

 Dr. Lawrence J. Dahm, a pathologist, testified that Espinosa died from a stab wound
to the chest which took considerable force to inflict. Espinosa also suffered facial bruising,
swelling, and an assault-type cutting wound on his face. He testified that Espinosa further
sustained "defensive" wounds to his right forearm which included a slicing wound, a large
complex slicing wound, and two superficial scratches. According to Dahm, the odd,
complex shape of the large wound indicated that both the assailant and Espinosa were in
motion when the wound was inflicted. Dahm testified that Espinosa's wounds were
consistent with Espinosa's acting defensively, but not consistent with a version of the
events that would have Espinosa acting aggressively. Dahm testified that the pattern of
Espinosa's wounds did not correlate with Espinosa lying on top of the individual wielding
the knife.

 II. Sufficiency of the Evidence


 In his first and second issues, appellant contends that the evidence was legally and
factually insufficient to disprove self-defense beyond a reasonable doubt. Appellant also
contends that the evidence established the defense of sudden passion.

 In assessing the legal sufficiency of the evidence to support a criminal conviction
under Jackson v. Virginia, 443 U.S. 307 (1979), the appellate court considers all of the
evidence in the light most favorable to the verdict and determines whether, based on that
evidence and reasonable inferences therefrom, a rational juror could have found the
essential elements of the crime beyond a reasonable doubt. See id. at 318-19; Rollerson
v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007). In contrast, when reviewing the factual sufficiency of the evidence,
we view the evidence in a neutral light. Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006). Evidence that rationally supports a verdict of guilt beyond a reasonable doubt
under the standard for legal sufficiency can be factually insufficient when the verdict seems
clearly wrong or manifestly unjust or against the great weight and preponderance of the
evidence. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006) (footnote
omitted). A proper factual sufficiency review must consider the most important evidence
that the appellant claims undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

 Both legal and factual sufficiency standards require the reviewing court to consider
all of the evidence. Rollerson, 227 S.W.3d at 724; Marshall, 210 S.W.3d at 625. A legal
sufficiency standard requires the reviewing court to defer to the jury's credibility and weight
determinations while a factual sufficiency standard permits the reviewing court to substitute
its judgment for the jury's on these questions "albeit to a very limited degree." Watson, 204
S.W.3d at 416-17; see Marshall, 210 S.W.3d at 625. The Court is authorized to disagree
with the fact finder's determination only when the record clearly indicates our intervention
is necessary to stop the occurrence of a manifest injustice. Johnson v. State, 23 S.W.3d
1, 9 (Tex. Crim. App. 2000). In this regard, the jury, as the trier of fact, is the exclusive
judge of the credibility of witnesses and the weight to be afforded their testimony. Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986). The jury is free to believe one version of the facts and reject
another. Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). It is also
entitled to accept or reject all or any portion of a witness's testimony. Id. 

 As pertains to this case, a person commits an assault if he intentionally, knowingly,
or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01 (Vernon
Supp. 2006). A person commits aggravated assault if the person commits assault as
defined in section 22.01 and the person uses or exhibits a deadly weapon during the
commission of the assault. Id. § 22.02(a)(2). 

 In order to prove that appellant committed the offense of murder under section
19.02(b)(1) of the Texas Penal Code, the State had to prove that appellant intentionally or
knowingly caused the death of the victim. Id. § 19.02(b)(1) (Vernon 2003). A person acts
intentionally when it is his conscious objective or desire to engage in the conduct or cause
the result. Id. § 6.03(a). A person acts knowingly when he is aware that his conduct is
reasonably certain to cause the result. Id. § 6.03(b). 

 Intent is a question of fact that is within the sole purview of the jury; the jury may rely
on its collective common sense and apply common knowledge and experience. Brown v.
State, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). Intent may be inferred from the
circumstantial evidence surrounding the incident including the acts, words, and conduct of
the accused. Guevara v. State, 152 S.W.3d 45, 50 ( Tex. Crim. App. 2004). Moreover,
the jury may infer the intent to kill from the use of a deadly weapon unless it would be
unreasonable to infer that death or serious bodily injury could result from the use of the
weapon. Mosley v. State, 983 S.W.2d 249, 254-55 (Tex. Crim. App. 1998) (citing Ross v.
State, 861 S.W.2d 870, 873 (Tex. Crim. App. 1992)). 

 A person is justified in using deadly force against another if he reasonably believes
that deadly force was immediately necessary to protect himself from the other's use, or
attempted use, of unlawful deadly force and a reasonable person in the actor's situation
would not have retreated. Tex. Penal Code Ann. §§ 9.31(a), 9.32(a). A defendant must
produce some evidence to raise the issue of self-defense. Zuliani v. State, 97 S.W.3d 589,
594 (Tex. Crim. App. 2003). Once the defendant produces some evidence, it is incumbent
upon the State to bear the burden of persuasion to disprove the defense. Id. However,
this burden does not require the State to produce evidence; rather, the State must satisfy
the fact finder of the guilt of the defendant beyond a reasonable doubt. Id. A guilty verdict
by the jury is an implied rejection of the defensive theory. Id. The issue of self-defense
is a fact issue for the jury, and the jury is free to accept or reject defensive evidence.
Saxton v. State, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).

 In the instant case, appellant admitted that he was wielding a knife during the fight,
although he did not recall stabbing Espinosa. After the fight, appellant's knife was found
covered with Espinosa's blood. A witness to the altercation testified that the individual who
stabbed Espinosa was wearing blue pants. Appellant was the only individual at the fight
who was dressed in blue pants. Garcia and Vaughn testified that appellant told them he
"shanked" Espinosa. 

 We conclude the evidence is both legally and factually sufficient to support
appellant's conviction. While appellant testified that he acted in self-defense and was
afraid for his life, this testimony was in direct contrast to that provided by witnesses Eneida,
Ocanas, Alvarado, and Zapatero, who testified that appellant pursued Espinosa with a
knife and stabbed him after he tripped and fell. Further, Dahm testified that Espinosa's
wounds were consistent with defensive but not aggressive behavior on the part of
Espinosa. Appellant also suggests that Garcia, Ruf, and Vaughn, as cousins, agreed to
put the blame on appellant. These individuals each denied this charge. The jury was the
sole judge of the credibility of the witnesses, and was free to reject appellant's theories of
the case. We will defer to the jury's finding.

 Appellant also contends that the evidence was factually sufficient to prove that he
killed the decedent in the immediate influence of sudden passion. The trial court instructed
the jury on sudden passion and included a jury issue on sudden passion. The jury found
against appellant on this issue.

 At the punishment stage of a murder trial, the defendant may raise the issue of
whether he caused the death under the immediate influence of sudden passion arising
from adequate cause. See Tex. Penal Code Ann. § 19.02(d). "Sudden passion" means
passion directly caused by, and arising out of, provocation by the individual killed or
another acting with the person killed that arises at the time of the offense and is not solely
the result of former provocation." Id. § 19.02(a)(2). "Adequate cause" means cause that
would commonly produce a degree of anger, range, resentment, or terror in a person of
ordinary temper, sufficient to render the mind incapable of cool reflection. Id. § 19.02(a)(1). 
If the defendant affirmatively proves sudden passion by a preponderance of the evidence,
the offense is reduced from a first-degree felony to a second-degree felony. Id. § 19.02(d);
McKinney v. State, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005); see Tex. Penal Code
Ann. § 19.02(c) (Vernon 2003) (murder is a first-degree felony). Thus, before a defendant
is allowed a jury instruction on sudden passion, he must prove that: (1) there was an
adequate provocation, (2) that a passion or an emotion such as fear, terror, anger, rage,
or resentment existed, (3) that the homicide occurred while the passion still existed and
before there was reasonable opportunity for the passion to cool, and (4) there was a causal
connection between the provocation, the passion, and the homicide. McKinney, 179
S.W.3d at 569.

 The defendant bears the burden of proving the issue of sudden passion. See
Hernandez v. State, 127 S.W.3d 206, 211-12 (Tex. App.-Houston [1st Dist.] 2003, pet.
ref'd). We review a challenge to the factual sufficiency of the evidence to support the jury's
rejection of the sudden passion claim using the same standard of review as a challenge
to the rejection of an affirmative defense. See Naasz v. State, 974 S.W.2d 418, 421 (Tex.
App.-Dallas 1998, pet. ref'd). That standard requires us to view all of the evidence in a
neutral light to determine whether the negative finding is so against the great weight and
preponderance of the evidence so as to be clearly wrong or manifestly unjust. See id.; see
also Zuliani, 97 S.W.3d at 594 (factual sufficiency standard of review for rejection of
affirmative defense); Hernandez, 127 S.W.3d at 212.

 Appellant argues that theft and assault are adequate causes to prompt sudden
passion to arise. In this regard, appellant argues that Espinosa provoked him by
committing theft and striking him. Reviewing all the evidence in a neutral light, we note that
appellant's principal defensive theory was self-defense, not sudden passion. As we held
above, the evidence is factually sufficient to support the implied finding against appellant's
self-defense claim, and we likewise hold that the jury's rejection of appellant's sudden
passion issue is not so against the great weight and preponderance of the evidence as to
be clearly wrong or manifestly unjust

 The overwhelming majority of the testimony indicated that appellant's group initiated
the violence against Espinosa. All of the testimony indicated that appellant's group had
recovered the video camera prior to appellant utilizing his knife to threaten, and later kill,
Espinosa. Therefore, the jury may have inferred that appellant lacked adequate
provocation for a finding of sudden passion. Further, while appellant testified he feared for
his life, the jury may have rejected this testimony given that the majority of the witnesses
indicated that appellant was the aggressor. Based on the evidence before us, we conclude
a rational jury could have found appellant was not acting in response to provocation by
Espinosa at the time he stabbed Espinosa. Therefore, we conclude the jury's rejection of
appellant's sudden passion claim was not so against the great weight and preponderance
of the evidence so as to be clearly wrong or manifestly unjust. See Hernandez, 127
S.W.3d at 212; Naasz, 974 S.W.2d at 421. We overrule appellant's first and second
issues.

III. Quotient Verdict


 In his third issue, appellant contends that the trial court abused its discretion in
overruling his motion for new trial complaining of a quotient verdict. 

 The defendant must be granted a new trial, or a new trial on punishment, when the
verdict has been decided by lot or in any manner other than a fair expression of the jurors'
opinion. See Tex. R. App. P. 21.3(c). Specifically, a defendant is entitled to a new trial
where a jury agrees to adopt and be bound by a "quotient verdict." Malbrough v. State,
846 S.W.2d 926, 927 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd) (citing Ramsey v.
State, 140 Tex. Crim. 561, 146 S.W.2d 192, 193 (Tex. Crim. App. 1940)). A quotient
verdict occurs where the jury agrees to divide by twelve the total of the number of the years
of imprisonment suggested by each juror, and to adopt the quotient as their verdict. 
McIntire v. State, 698 S.W.2d 652, 667 (Tex. Crim. App. 1985) (Onion, P.J., dissenting). 
A "quotient verdict" is impermissible, but only if the jurors agree in advance to be bound
by the outcome of the average. Martinez v. State, 496 S.W.2d 612, 613-14 (Tex. Crim.
App. 1973). It is appellant's burden to bring forth evidence of such an agreement. 
Malbrough, 846 S.W.2d at 927. A determination of whether such an agreement existed
is in the discretion of the trial court. Id. Absent a finding of such an agreement, there is
no error shown. See id.

 In the instant case, an attorney for a co-defendant testified that, following the
verdict, he saw papers on the jury table that appeared to contain a list of the jurors' names
with a number written out to the side of each name. These numbers were added, and the
sum divided by twelve, and the resulting number, "35," was circled. The jury's verdict
sentenced appellant to thirty-five years' imprisonment. 

 There is no evidence of any agreement by the jurors to be bound by the averaging
of their respective positions on the appropriate punishment in this case. Accordingly, we
cannot say that the trial court abused its discretion. See id. We overrule appellant's third
issue.

IV. Charge Errors


 Appellant's fourth, fifth, sixth, seventh, and eighth issues raise charge error. 
Appellate review of error in a jury charge involves a two-step process. Abdnor v. State,
871 S.W.2d 726, 731 (Tex. Crim. App. 1994). Initially, we must determine whether error
occurred. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc). 
Then, if we find error, we analyze that error for harm. Id.; see Posey v. State, 966 S.W.2d
57, 60 & n.5 (Tex. Crim. App. 1998) (en banc). Properly preserved charge error requires
reversal if the error was "calculated to injure the rights of [the] defendant," which means
no more than that there must be some harm to the accused from the error. Tex. Code
Crim. Proc. Ann. art. 36.19 (Vernon 2006); see also Abdnor, 871 S.W.2d at 731-32;
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In other
words, a properly preserved error will call for reversal as long as the error is not harmless.
Almanza, 686 S.W.2d at 171. In making this determination, "the actual degree of harm
must be assayed in light of the entire jury charge, the state of the evidence, including the
contested issues and weight of probative evidence, the argument of counsel and any other
relevant information revealed by the record of the trial as a whole." Id.; see also Ovalle v.
State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000). 

A. Protection of Third Person's Property


 In his fourth issue, appellant argues that the trial court erred by failing to charge the
jury on the defense of protection of a third person's property. In his eighth issue, appellant
contends that the trial court's failure to charge on the use of deadly force to prevent the
consequences of theft was egregious error.

 An accused is entitled to an instruction on any defensive issue raised by the
evidence, whether that evidence is weak or strong, unimpeached or contradicted, and
regardless of what the trial court may think about the credibility of the evidence. Granger
v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); Hudson v. State, 145 S.W.3d 323,
324-25 (Tex. App.-Fort Worth 2004, pet. ref'd). But when the evidence fails to raise a
defensive issue, the trial court commits no error in refusing a requested instruction. Muniz
v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); Hudson, 145 S.W.3d at 325.

 Section 9.43 of the penal code controls the protection of a third person's property
and provides that: 

 A person is justified in using force . . . against another to protect land or
tangible, movable property of a third person if, under the circumstances as
he reasonably believes them to be, the actor would be justified under Section
9.41 . . . in using force . . . to protect his own land or property and:


 (1) the actor reasonably believes the unlawful interference constitutes
attempted or consummated theft of or criminal mischief to the tangible,
movable property; or 


 (2) the actor reasonably believes that:


 (a) the third person has requested his protection of the land or
property; 


 (b) he has a legal duty to protect the third person's land or property;
or


 (c) the third person whose land or property he uses force or deadly
force to protect is the actor's spouse, parent, or child, resides with the
actor, or is under the actor's care.


Tex. Penal Code Ann. § 9.43 (Vernon 2003). Under section 9.41 of the penal code, a
person is justified in using force in protection of one's own property "when and to the
degree the actor reasonably believes the force is immediately necessary to prevent or
terminate the other's trespass on the land or unlawful interference with the property." See
id. 9.41(a). Alternatively, a person is justified in using force when and to the degree the
actor reasonably believes the force is immediately necessary to reenter the land or recover
the property if the actor uses the force immediately or in fresh pursuit after the
dispossession and the actor reasonably believes the other had no claim of right when he
dispossessed the actor or the other accomplished the dispossession by using force, threat,
or fraud against the actor. See id.

 Appellant must show he believed his actions were necessary in order to recover the
video camera. Refusal to instruct the jury on defense of property is not error when there
is no evidence of a defendant's reasonable belief that force was necessary to recover his
property. MacDonald v. State, 761 S.W.2d 56, 61 (Tex. App.-Houston [14th Dist.] 1988,
pet. ref'd). Upon reviewing the record, there is no mention of a reasonable belief on the
part of appellant that force was necessary to recover the video camera. In fact, the
evidence clearly indicates that appellant and his friends had recovered the video camera
before appellant pulled out his knife. Accordingly, appellant was not entitled to an
instruction on defense of property because there was no evidence that the use of force
was immediately necessary to terminate a trespass or interference with property. We
overrule appellant's fourth issue.

 Deadly force can be used to protect property when and to the degree the actor
reasonably believes is immediately necessary to prevent the imminent commission of
arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal
mischief during the nighttime, and when the property cannot be protected by any other
means, or the use of force other than deadly force would expose the actor or another to
a substantial risk of death or serious bodily injury. Tex. Penal Code Ann. § 9.42 (Vernon
2003). None of those scenarios apply here. See Phoenix v. State, 640 S.W.2d 306, 307
(Tex. Crim. App. 1982). The statute specifically requires theft during the nighttime, and
since the alleged theft took place during the day, appellant's reasonable belief that a mere
theft was being committed would not be sufficient to warrant a jury instruction. There is no
need to address the question of whether appellant reasonably believed the property could
not be protected by any other means where there is no evidence to suggest a crime was
committed that would warrant deadly force. See id. Appellant failed to raise the necessary
evidence of the elements of deadly force defense of property. We overrule appellant's
eighth issue.

B. Self-Defense


 In his fifth issue, appellant contends the trial court erred in failing to instruct the jury
to view the evidence on self-defense from the standpoint of the appellant. Appellant cites
no argument or authority for this proposition, and accordingly, we consider this issue to be
inadequately briefed. See Tex. R. App. P. 38.1(g),(h). Moreover, based on our review of
the charge, the jury was properly charged on self-defense, including repeated directives
to view appellant's beliefs or fears "viewed from his standpoint at the time," "as it appeared
to him from his standpoint at the time," and as "viewed from his standpoint alone." We
overrule appellant's fifth issue.

C. Provoking the Difficulty


 In his sixth issue, appellant contends the trial court erred in overruling appellant's
objection that there was no evidence to support a charge on provoking the difficulty. In his
seventh issue, appellant argues that the trial court's charge on provoking the difficulty, thus
limiting the appellant's right to self-defense, was egregious error.

 Provoking the difficulty is a concept in criminal law which acts as a limitation or total
bar on a defendant's right to assert self-defense. Smith v. State, 965 S.W.2d 509, 512
(Tex. Crim. App. 1998) ("[I]f the defendant employs provocation with intent to assault the
victim, and provokes an attack and makes an assault, then self-defense is lost as to the
assault."). The doctrine of provocation is codified in section 9.31(b)(4) of the penal code. 
See Tex. Penal Code Ann. § 9.31(b)(4) (Vernon 2003); Smith, 965 S.W.2d at 513; Harrod
v. State, 203 S.W.3d 622, 628 (Tex. App.-Dallas 2006, no pet.). Under section 9.31(b)(4),
the use of force against another is not justified if the actor provoked the other's use or
attempted use of unlawful force, unless: (A) the actor abandons the encounter, or clearly
communicates to the other his intent to do so reasonably believing he cannot safely
abandon the encounter; and (B) the other nevertheless continues or attempts to use
unlawful force against the actor. Tex. Penal Code Ann. § 9.31(b)(4).

 An instruction on provocation is required when there is sufficient evidence: (1) the
defendant did some act or used some words which provoked the attack on him, (2) such
act or words were reasonably calculated to provoke the attack, and (3) the act was done
or the words were used for the purpose and with the intent the defendant would have a
pretext for inflicting harm upon the other. Smith, 965 S.W.2d at 513; Harrod, 203 S.W.3d
at 628. All of the elements are questions of fact. Smith, 965 S.W.2d at 513; Harrod, 203
S.W.3d at 628. The exact words said or action taken by the defendant causing the attack
need not be proven to the jury; rather the jury must merely be able to find that there were
some provoking acts or words. Smith, 965 S.W.2d at 515; Kennedy v. State, 193 S.W.3d
645, 655 (Tex. App.-Fort Worth 2006, pet. ref'd). Upon appellate review, we ask whether,
viewing the evidence in the light most favorable to giving the instruction, there was
sufficient evidence from which a rational jury could have found every element of
provocation beyond a reasonable doubt. Smith, 965 S.W.2d at 514. 

 We first consider whether appellant did some act or used some words which
provoked an attack on him. Id. We next consider whether appellant's acts or words were
reasonably calculated to provoke the attack. Id. Finally, we consider whether the act was
done, or the words were used, for the purpose and with the intent that appellant would
have a pretext for inflicting harm on Espinosa. Id. 

 Here, viewing the evidence in the light most favorable to giving the instruction, we
conclude there was sufficient evidence from which the jury could find appellant's acts or
words, or both, caused an attack upon him. The majority of the witnesses, including all
independent witnesses, testified that appellant and his friends initiated the violence against
Espinosa and Salazar. McCrae testified that appellant's group began the physical assault
on Espinosa and Salazar before inquiring about the video camera or asking for its return. 
The only witnesses who testified otherwise were Ruf and appellant. Appellant admitted
that he was mad when he was told that the camera had been stolen and that he wanted
to fight with Espinosa's group because he was angry. He admitted engaging in the
physical altercation with Espinosa. 

 It is apparent that physical violence is reasonably calculated to cause an individual
to defend himself. The jury may have inferred that appellant's words to Espinosa, as he
advanced on him, that "You don't think I'll do it," while Espinosa was backing away,
indicated that appellant was seeking a pretext to harm Espinosa. 

 The evidence is sufficient to allow a rational jury to find beyond a reasonable doubt
appellant's acts or words, or both, actually caused any attack on him, and under all the
circumstances then present, were reasonably calculated to provoke an attack by the
decedent and that appellant's actions were done with the intent to harm the decedent. See
id. Because sufficient evidence exists on each element of provocation to allow a rational
jury to find provocation beyond a reasonable doubt, the trial court did not err by instructing
the jury on provocation. Because we conclude there was no jury charge error by the trial
court, we do not reach the issue of harm. See Ngo v. State, 175 S.W.3d 738, 743 (Tex.
Crim. App. 2005). We resolve appellant's sixth issue against him.

V. Prosecutorial Misconduct


 In his ninth, tenth, and eleventh issues, appellant complains of prosecutorial error
in (1) failing to call a witness with favorable testimony to appellant; (2) characterizing
appellant as a "white guy" and the deceased as "Hispanic," thus unfairly injecting race into
the trial; and (3) referring to appellant as an "animal." In his twelfth and final issue,
appellant contends that the prosecutor's overall actions constituted "cumulative error."

 An appellate court reviews allegations of prosecutorial misconduct on a case by
case basis. Stahl v. State, 749 S.W.2d 826, 830 (Tex. Crim. App. 1988) (en banc). The
review is not limited to only the facts of each case, but also the probable effect on the
jurors' minds. Hodge v. State, 488 S.W.2d 779, 781-82 (Tex. Crim. App. 1973). Three
factors which may be considered in determining whether prosecutorial misconduct resulted
in reversible error are: (1) whether the defendant objected to the conduct of the
prosecutor, (2) whether the prosecutor deliberately violated a court order, and (3) whether
the prosecutorial misconduct was so blatant as to border on being contumacious. Stoker
v. State, 788 S.W.2d 1, 14 (Tex. Crim. App. 1989) (citing Landry v. State, 706 S.W.2d 105
(Tex. Crim. App. 1985)). Although this list is neither exhaustive nor mandatory, it does
provide a starting point for identifying reversible conduct. Stahl, 749 S.W.2d at 826.

 In issue nine, appellant contends that the State's failure to call Susan McCrae as
a witness constituted prosecutorial misconduct because the State was aware that McCrae
would testify that Espinosa, and not Salazar, stole the video camera. Appellant thus
contends that the State was effectively concealing a material fact witness. 

 In Brady, the United States Supreme Court concluded that the suppression by the
prosecution of evidence favorable to a defendant violates due process if the evidence is
material either to guilt or punishment, without regard to the good or bad faith of the
prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963); Harm v. State, 183 S.W.3d 403,
405 (Tex. Crim. App. 2006); Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). To
find reversible error under Brady, a defendant must show that: (1) the State failed to
disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld
evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable
probability that had the evidence been disclosed, the outcome of the trial would have been
different. Hampton v. State, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002); see Harm, 183
S.W.3d at 405. Under Brady, the defendant bears the burden of showing that, in light of
all the evidence, it is reasonably probable that the outcome of the trial would have been
different had the prosecutor made a timely disclosure. Hampton, 86 S.W.3d at 612. The
mere possibility that an item of undisclosed information might have helped the defense,
or might have affected the outcome of the trial, does not establish materiality in the
constitutional sense. Id.

 McCrae was a disclosed witness who was ultimately called to testify by appellant. 
The record fails to show that McCrae's testimony regarding whether Salazar or Espinosa
originally obtained possession of the video camera was material in the context of the
ensuing altercation. There is no evidence in the record that McCrae told appellant or his
friends that she believed Espinosa, rather than Salazar, originally took the video camera.
Moreover, it could be argued that certain aspects of McCrae's testimony were, in fact, not
favorable for appellant insofar as she unequivocally testified that appellant's group
attacked Espinosa and Salazar without first asking for the return of the video camera. 
Further, presenting evidence claimed to be exculpatory can make a Brady violation
harmless, unless the defendant shows a reasonable probability that an earlier disclosure
would have made the outcome of the proceeding different. See Marshall v. State, 210
S.W.3d 618, 636 (Tex. Crim. App. 2006). Because appellant presented McCrae's
testimony to the trier of fact, we find that any potential Brady violation was harmless. See
id. We overrule appellant's ninth issue.

 In appellant's tenth issue, he contends that the prosecutor's repeated
characterization of appellant and his friends as "white guys," while referring to the decedent
and his friends as "Hispanic," unfairly injected race into the trial. Appellant failed to object
to these characterizations. See Tex. R. App. P. 33.1; Hernandez v. State, 219 S.W.3d 6,
13-14 (Tex. App. 2006). We further note that trial counsel for the defense also utilized
these descriptive terms for the groups. Under these circumstances, we decline to find
error. We overrule appellant's tenth issue.

 In appellant's eleventh issue, he contends that the prosecutor's reference to the
defendant as an "animal" was extreme and manifestly improper argument. Before a
defendant will be permitted to complain on appeal about an erroneous jury argument, the
defendant will have to show he objected and pursued his objection to an adverse ruling. 
Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); see Tex. R. App. P. 33.1. The
failure to object to a jury argument forfeits the right to complain about the argument on
appeal. Cockrell, 933 S.W.2d at 89. In the instant case, appellant failed to object, and
accordingly, the issue is not preserved for appeal. 

 Moreover, while name-calling by the prosecution is generally improper argument,
if the characterization is supported by the evidence, then it has been held to be permissible
as a reasonable deduction from the evidence. Burns v. State, 556 S.W.2d 270, 285 (Tex.
Crim. App. 1977); see Easley v. State, 454 S.W.2d 758, 761 (Tex. Crim. App. 1970)
(holding that use of "savage," while not to be commended, was supported by evidence). 
Use of the epithet "animal" has specifically been upheld in such situations. See Burns, 556
S.W.2d at 285; Belton v. State, 900 S.W.2d 886, 898 (Tex. App.-El Paso 1995, pet. ref'd); 
Garza v. State, 783 S.W.2d 796, 800 (Tex. App.-San Antonio 1990, no pet.). Other similar
characterizations have also been upheld as supported by the evidence. See, e.g.,
Kennedy v. State, 193 S.W.3d 645, 656 (Tex. App.-Fort Worth 2006, pet. ref'd) (collecting
cases and noting that Texas courts have upheld arguments calling a defendant an animal,
a fool, vicious, a liar, a dog, a cold-blooded killer, a jerk, a troublemaker, and a one-man
crime wave and contending that a defendant "has no conscience, no heart, no recognition
of right or wrong [and is] perched on the rim of hell, looking deep into it" as reasonable
deductions from the evidence in light of the facts of each case). 

 In the instant case, the evidence at trial indicated that: appellant pursued Espinosa
with a knife, then seized the opportunity to stab Espinosa when he tripped and fell;
appellant told Eneida "[t]hat's what you get for stealing," and "[y]ou don't fuck with us, you
fucking thieves;" and, according to one witness, appellant was almost "celebrating" after
the fight. The record also reflects that once Espinosa had been stabbed and was down,
appellant and one of his friends repeatedly kicked Espinosa in the face and chest, and
appellant pushed Eneida aside, knocking her to the ground. While we do not condone the
prosecutor's characterization of appellant as an "animal," under these circumstances, we
do not find error in this argument. We overrule appellant's eleventh issue. 

 In his twelfth and final issue, appellant contends that the prosecutor's overall actions
constitute cumulative error. We agree that a number of errors may be harmful in their
cumulative effect. Feldman v. State, 71 S.W.3d 738, 757 (Tex. Crim. App. 2002).
Nevertheless, after evaluating appellant's complaints, we conclude that cumulative error
has not been shown here.

VI. Conclusion


 Having overruled each of appellant's issues on appeal, we affirm the judgment of
the trial court.

 

 ROGELIO VALDEZ

 Chief Justice



Dissenting Memorandum Opinion

by Justice Charles F. Baird.


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed 

this the 7th day of February, 2008.
1. Retired Justice Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court
of Texas pursuant to the government code. See Tex. Gov't Code Ann. § 74.003 (Vernon 2005).