ACCEPTED
03-14-00413-CR
4524529
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/17/2015 10:35:24 AM
JEFFREY D. KYLE
CLERK

No. 03-14-00413-CR

IN THE COURT OF APPEALS FOR THE THIRD JUDICIAL DISTRICT
OF TEXAS, AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/17/2015 10:35:24 AM
JEFFREY D. KYLE
Clerk

## Priscilla Aguilar Hernandez
Appellant

v.

## The State of Texas
Appellee

On Appeal from the 452nd District Court of McCulloch County in Cause No.
5797; the Honorable Robert R. Hofmann, Judge Presiding

# State's Brief

Submitted by:

**Tonya Spaeth Ahlschwede**
District Attorney, 452nd District Court
1024 McKinley
Post Office Box 635
Mason, Texas 76849
eMail: tsa@452da.net
Tel: 325-347-8400
Fax: 325-347-8404
State Bar Card No. 24025656

**Oral Argument Conditionally Requested**

# Identity of Parties and Counsel

Pursuant to the Rules of Appellate Procedure ("Tex.R.App.Pro."), the following is a complete list of the names and addresses of all parties to the trial court's final judgment and their counsel in the trial court, as well as appellate counsel, so the members of the Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case and so the Clerk of the Court may properly notify the parties to the trial court's final judgment or their counsel, if any, of the judgment and all orders of the Court of Appeals.

## Appellant

**Priscialla Aguilar Hernandez**
TDCJ-ID No. 01866232
Christina Melton Crain Unit
1401 State School Road
Gatesville, Texas 76599-2999

Trial Counsel

**Clay Steadman**,
SBN 00785038,
**Steve Pickel**,
SBN 15970500
612 Earl Garrett
Kerrville, Texas 78028

**Tammy Yvette Schmidt-Keener**
SBN 90001550
1220 West Austin St
Fredericksburg, Texas 78624

Appellate Counsel

**M. Patrick Maguire**
SBN 24002515
945 Barnett Street
Kerrville, Texas 78028

## State of Texas

**Tonya Spaeth Ahlschwede**
District Attorney, 452nd District
SBN 24025656
1024 McKinley
Post Office Box 635
Mason, Texas 76849

i

# Table of Contents

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Issues Presented in Appellant's Brief. . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Note About Abbreviations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Appellant's Point of Error One Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . 4

> **The Jury's Negative Answer to the Sudden Passion Issue in the Trial Court's Punishment Charge Is Against the Great Weight and Preponderance of the Evidence, I.e., Factually Insufficient**.

The State's Counter-Point. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

> **The Evidence Is Sufficient to Support the Jury's Rejection of the Sudden Passion Submission**.

Facts Relevant to Counter-Point One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of the State's Argument - Counter-Point One. . . . . . . . . . . . . . . 4

Argument & Authorities - Counter-Point One. . . . . . . . . . . . . . . . . . . . . . . 5

Conclusion - Counter-Point One. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# Table of Contents
## (CONT)

Appellant's Point of Error Two Restated. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**The Jury's Negative Answer to the Self-Defense Issue in the Trial Court's Charge at the Guilt/Innocence Stage of the Trial Is Against the Great Weight and Preponderance of the Evidence, i.e., Factually Insufficient**.

The State's Counter Point. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**The Evidence is Sufficient to Support the Jury's Rejection of the Self-Defense Submission**.

Facts Relevant to Counter-Point of Error Two. . . . . . . . . . . . . . . . . . . . . 12

Summary of the State's Argument - Counter-Point Two. . . . . . . . . . . . . . . 13

Argument & Authorities - Counter-Point Two. . . . . . . . . . . . . . . . . . . . . 13

Conclusion - Counter-Point Two. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Compliance and Delivery . . . . . . . . . . . . . . . . . . . . . . . . . 21

# Index of Authorities

**Federal Cases**:

*Jackson v. Virginia*, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . 13

**Texas Cases**:

*Brooks v. State*, 323 S.W.3d 893 (Tex.Cr.App. 2010). . . . . . . . . . . . . . . . 13

*Daniels v. State*, 645 S.W.2d 459 (Tex.Cr.App. 1983). . . . . . . . . . . . . . . 11

*Dewberry v. State*, 4 S.W.3d 735 (Tex.Cr.App. 1999). . . . . . . . . . . . . . . 14

*Garcia v. State*, 367 S.W.3d 683 (Tex.Cr.App. 2012). . . . . . . . . . . . . . . . 14

*Hooper v. State*, 214 S.W.3d 9 (Tex.Cr.App. 2007). . . . . . . . . . . . . . . 14, 15

*Isassi v. State*, 330 S.W.3d 633 (Tex.Cr.App. 2010). . . . . . . . . . . . . . . . . 13

*Jackson v. State*, 160 S.W.3d 568 (Tex.Cr.App. 2005). . . . . . . . . . . . . . . . 5

*Johnson v. State*, 364 S.W.3d 292 (Tex.Cr.App. 2012). . . . . . . . . . . . . . . 14

*Malik v. State*, 953 S.W.2d 234 (Tex.Cr.App. 1997). . . . . . . . . . . . . . . . . 14

*Matlock v. State*, 392 S.W.3d 662 (Tex.Cr.App. 2013). . . . . . . . . . . . . . 5, 6

*Meraz v. State*, 785 S.W.2d 146 (Tex.Cr.App. 1990). . . . . . . . . . . . . . . . . 6

*Naasz v. State*, 974 S.W.2d 418 (Tex. App. - Dallas 1998). . . . . . . . . . . . 11

*Ovalle v. State*, 13 S.W.3d 774 (Tex.Cr.App. 2000). . . . . . . . . . . . . . . . . 10

*Perez v. State*, 323 S.W.3d 298 (Tex.App. - Amarillo 2015). . . . . . . . . . . . 7

# Index of Authorities
(CONT)

**Texas Cases** (CONT):

***Saxton v. State***, 804 S.W.2d 910 (Tex.Cr.App. 1991).. . . . . . . . . . . 13, 17, 19

***Wesbrook v. State***, 29 S.W.3d 103 (Tex.Cr.App. 2000). . . . . . . . . . . . . . . 11

***Wooten v. State***, 400 S.W.3d 601 (Tex.Cr.App. 2013). . . . . . . . . . . . . . . . 11

***Zuliani v. State***, 97 S.W.3d 589 (Tex.Cr.App. 2005). . . . . . . . . . . . . . . . . 17


**Texas Statutes / Codes**:

Penal Code

Section 9.31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 9.31(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Section 9.31(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Section 9.32(a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 9.32(a)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 19.02(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Section 19.02(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Section 19.02(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Section 19.02(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 11

## Statement of the Case

The following is a brief general statement of the nature of the cause or offense:

Appellant was convicted by a jury of the offense of murder. The jury, after hearing evidence at punishment, rejected the submission of sudden passion and assessed punishment at thirty (30) years and a $5,000 fine.

## Issues Presented in Appellant's Brief

The following are the points upon which Appellant has predicated her appeal:

**ISSUE 1: The jury's negative answer to the sudden passion issue in the trial court's punishment charge is against the great weight and preponderance of the evidence, i.e., factually insufficient.**

**ISSUE 2: The jury's negative answer to the self-defense issue in the trial court's charge at the guilt/innocence stage of the trial is against the great weight and preponderance of the evidence, i.e., factually insufficient.**

## Statement Regarding Oral Argument

The State requests oral argument only if Appellant is granted oral argument.

## Note About Abbreviations

In this brief, the State refers to the Clerk's Record as "CR" followed by the appropriate page: e.g., "(CR 123)." The State refers to the Reporter's Record as "RR" followed by the volume, page and line numbers: e.g., "(RR Vol. 3, P. 47, L. 12-15).

No. 03-14-00413-CR

IN THE COURT OF APPEALS FOR THE THIRD JUDICIAL DISTRICT
OF TEXAS, AT AUSTIN

**Priscilla Aguilar Hernandez**
Appellant

v.

**The State of Texas**
Appellee

On Appeal from the 452nd District Court of McCulloch County in Cause No.
5797; the Honorable Robert R. Hofmann, Judge Presiding

# State's Brief

TO THE HONORABLE THIRD COURT OF APPEALS:

COMES NOW, the State of Texas, Appellee in the above styled and numbered cause, by and through her duly elected District Attorney, Tonya Spaeth Ahlschwede, and respectfully files the State's Brief, and would show the Court as follows:

## Statement of Facts

The deceased, Appellant's husband, Jimmie Joe Hernandez, and Appellant had a rocky relationship, characterized by Appellant's affair with the deceased's fourteen year-old cousin (RR Vol. 4, P. 19). The deceased and Appellant were

1

together on the date of the offense, seemingly happy (RR Vol. 4, P. 150), although Appellant continued to exchange texts of a sexual nature with her paramour throughout the day (RR Vol. 4, PP. 24-25, 27).

Appellant and the deceased consumed alcohol and began to argue, the argument continuing after they had reached their house. During the argument, Appellant threw a knife at the deceased, but missed hitting him. The deceased stated, "you missed, bitch," and returned the knife (RR Vol. 3, P. 98). Appellant turned around to walk away at which time the deceased said, "go fuck another kid," after which Appellant turned around and stabbed the deceased (RR Vol. 3, PP. 98-99). Appellant then said, "Ha, Bitch," (RR Vol. 3, P. 99). The deceased pulled the knife out as Appellant was walking away, threw it on the floor and said, "Don't call the cops" (RR Vol. 3, PP. 99-100, 102-103). The deceased went outside and fell down (RR Vol. 3, P. 100).

There was evidence that the deceased was not threatening Appellant, although he might have spit on Appellant's face (RR Vol. 3, P. 112). He never threw a knife at her (RR Vol. 3, PP. 112-113). He never threatened to hurt Appellant in any way (RR Vol. 3, P. 113). The deceased died of a stab wound to the heart (RR Vol. 3, PP. 152-153, 155-156). Toxicology testing revealed that he

was intoxicated with .21 BAC at the time of his death, but there were no other drugs in the deceased's body (RR Vol. 3, P. 156).

Appellant testified that the deceased had told her she was a "fucking bitch" at the after party at the Saucedo's (RR Vol. 4, P. 199). She went home and then heard the deceased outside yelling on the phone (RR Vol. 4, P. 202). She went out to investigate and the deceased attacked her and she kicked at him, after which he took off her boot and threw it (RR Vol. 4, P. 202). She told him to go to his mother's but he hit her in the eye and spit in her face (RR Vol. 4, P. 203). He slapped her phone out of her hands and it broke (RR Vol. 4, PP. 203-204). She went inside. She tried to retreat but he followed and, while Staci Leach wasn't looking, he pushed her (RR Vol. 4, PP. 205-206). She hit him with the pan (RR Vol. 4, P. 206). She was trying to get him to leave (RR Vol. 4, P. 206). The deceased threw a knife at her feet, she picked it up and stabbed him with it (RR Vol. 4, PP. 206-207).

Appellant put on evidence from an expert witness that she was suffering from PTSD and was a "battered woman" (RR Vol. 4, PP. 256, 268). According to the expert, Appellant was in "fight or flight" mode and feared for her safety (RR Vol. 4, PP. 262-263). The expert agreed that she was not saying that

3

Appellant did not intend to stab the deceased knowing that it could cause death (RR Vol. 4, P. 280).

## Appellant's Point of Error One Restated

**The Jury's Negative Answer to the Sudden Passion Issue in the Trial Court's Punishment Charge Is Against the Great Weight and Preponderance of the Evidence, I.e., Factually Insufficient.**

## The State's Counter-Point

**The Evidence Is Sufficient to Support the Jury's Rejection of the Sudden Passion Submission**.

## Facts Relevant to Counter-Point One

The State relies on the facts as set out in the Statement of Facts, *supra*, and as set forth herein.

## Summary of the State's Argument - Counter-Point One

The evidence supporting the verdict is, in its entirety, sufficient to support the jury's decision as to sudden passion. This Court need not search the record for evidence favorable to the finding, because that evidence is evident throughout. It cannot be said that no evidence supports the finding, and it most assuredly cannot be said that "sudden passion" was established as a matter of law. When all of the evidence is reviewed in a neutral light, the jury's finding cannot be said to be so against the great weight and preponderance of the

evidence as to be manifestly unjust. The evidence supporting the jury's decision was overwhelming.

## Argument & Authorities - Counter-Point One

The jury at punishment was instructed regarding the issue of sudden passion (CR 255-256). Sudden passion is a punishment issue which, like an affirmative defense, must be proved by the defendant by a preponderance of the evidence. Penal Code § 19.02(d); *Jackson v. State*, 160 S.W.3d 568, 573 n.3 (Tex.Cr.App. 2005)(noting that legislature had made sudden passion a punishment issue instead of an affirmative defense to the crime). Due to the defendant's burden of proof, an appellate court reviews an affirmative defense and the issue of sudden passion for both legal and factual sufficiency. *Matlock v. State*, 392 S.W.3d 662, 667 & n.14 (Tex.Cr.App. 2013).

A challenge to the sufficiency of the evidence in support of a jury's rejection of an issue on which the defendant had the burden of proof by a preponderance of the evidence is construed as an assertion that the contrary was established as a matter of law. *Matlock*, 392 S.W.3d at 669. When presented with such an issue on appeal, an appellate court must first search the record for evidence favorable to the finding, and in doing so, must disregard all contrary

5

evidence unless a reasonable factfinder could not. *Matlock*, 392 S.W.3d at 669.

If no evidence supports the finding, the reviewing court must then determine

whether the contrary was established as a matter of law. *Matlock*, 392 S.W.3d at

669. To review the sufficiency of the evidence in support of a jury's rejection of

an issue on which the defendant had the burden of proof by a preponderance of

the evidence, all of the evidence is reviewed in a neutral light and it must be

determined whether the jury's finding is so against the great weight and

preponderance of the evidence as to be manifestly unjust. *Matlock*, 392 S.W.3d

at 670-71; *Meraz v. State*, 785 S.W.2d 146, 154 (Tex.Cr.App. 1990).

Appellant claims that, when she killed her husband, she was influenced by

sudden passion that arose due to an argument which she had with her husband

which developed after her husband insulted her. She argues:

> In cases where appellate courts have upheld a jury finding rejecting
> the "sudden passion" defense, there are typically facts to indicate
> some reflection on the defendant's part that showed some (even very
> brief) premeditation that mitigate against a sudden passion finding.
> This could be a statement or an action by the defendant. However, in
> this case, there are no facts that indicate any premeditation on
> Appellant's part.

Appellant's brief, P. 14. The problem with Appellant's analysis is that it ignores

both the facts and the law.

There were two witnesses to the events leading to the deceased's death, Staci Leach and Appellant. The jury had its choice of which witness to believe. Determinations of factual sufficiency are generally resolved by an assessment of whether the witness is credible. ***[Perez v. State](#)***, 323 S.W.3d 298, 306 (Tex.App. - Amarillo 2015). The jury was not bound by the Appellant's testimony regarding her actions or intent but was obligated to arrive at its own conclusion. The jury chose to believe Staci Leach, the disinterested witness, and to reject the evidence of Appellant. The evidence is sufficient to support the jury's rejection of any suggestion of "sudden passion" causing Appellant's actions.

It is apparent from the record that the deceased and Appellant had been arguing and fighting outside of the home, which argument moved indoors (RR Vol. 3, P. 96). Appellant had spit on her face and the deceased admitted to Leach that he had spit on his wife (RR Vol. 3, P. 125). The deceased did not throw a knife at Appellant, or in any other manner threaten her (RR Vol. 3, PP. 112-113). He did not hit Appellant (RR Vol. 3, P. 125). Even Appellant, after relating that the deceased and she had argued outside during which the deceased attacked her, took off her boot and threw it away, stated only that, after the argument had moved inside, the deceased "pushed" her (RR Vol. 4, PP. 205-206).

Everyone who testified agreed that it was Appellant who hit the deceased with a cooking pot (RR Vol. 3, PP. 96-97, 197-198; RR Vol. 4, P. 206), and that the deceased did not fight back (RR Vol. 3, P. 97). Despite that lack of reaction by the deceased, it was Appellant who introduced knives into the argument when she picked up some from either out of a drawer or from the counter (RR Vol. 3, P. 97).

The testimony showed that the deceased left the kitchen, but Appellant followed him and was arguing (RR Vol. 3, P. 98). It was at that point that Appellant threw a knife at the deceased. It missed him and stuck in the floor (RR Vol. 3, P. 98). The deceased, perhaps ill-advisedly, picked up the knife and returned it to Appellant, telling her to try again and calling her a "bitch" (RR Vol. 3, P. 98).

When Appellant turned away, the deceased told her to "go fuck another kid" (RR Vol. 3, P. 98). Appellant then turned back and stabbed the deceased one time, fatally (RR Vol. 3, P. 98). She told her dying husband, "Ha, Bitch" (RR Vol. 3, PP. 99-100). The evidence upon which the jury was entitled to rely clearly showed that Appellant attacked the deceased three times, first by hitting

him over the head with a cooking pot, then by throwing a knife at him and, lastly, by stabbing him in his heart.

While there is evidence from Appellant that she did not remember taking up the knives and instigating the deadly encounter, (RR Vol. 4, P. 206), she did not deny the State's case. She remembered, perhaps conveniently, that Appellant had struck her while they argued outside, prior to entering the home (RR Vol. 4, PP. 202-203).

There was, thus, evidence that Appellant and the deceased engaged in an argument revolving around Appellant's infidelities with the deceased's underage nephew, that both were intoxicated, that Appellant confronted the deceased as he returned home, that the deceased spit on Appellant and broke her telephone (RR Vol. 4, PP. 203-204), and that the argument continued in the home. There is evidence that, during the argument in the home, Appellant, without provocation other than, perhaps, a push, beat the deceased over the head with a cooking pot and that the deceased did not react with anything other than words.

The evidence showed that Appellant escalated the fight by grabbing knives and throwing one at the deceased, but missing. The evidence supporting the verdict showed that the deceased returned the knife which had been thrown at

9

him, called his wife a "bitch," and invited her to try again. The evidence clearly showed that Appellant reacted to this by turning away, only to stab the deceased to death when he told her to "go fuck another kid."

To argue, as Appellant does, that there is no action on her part indicating premeditation, is almost disingenuous. She hit him with a cooking pot and when the argument continued despite her aggressive actions, she grabbed the murder weapon and attempted to use it by throwing it at the deceased. When that failed, and the weapon was returned to her, she responded to an argumentative, and not unfair, comment on her sexual proclivities outside of the marriage, by stabbing her husband. The facts clearly show an intentional and knowing act, and the jury was free to believe or disbelieve any piece of the evidence. ***Ovalle v. State***, 13 S.W.3d 774 (Tex.Cr.App. 2000).

As to the law, sudden passion is a mitigating circumstance which, if found by the jury to have been proven by a preponderance of the evidence, reduces the offense of murder from a first-degree felony to a second-degree felony. Penal Code § 19.02(c)&(d). At the punishment phase of trial, a defendant may raise the issue of sudden passion, but has the burden to prove that she caused the death under the immediate influence of sudden passion which arose from an "adequate

10

cause." Penal Code § 19.02(d); see *Wesbrook v. State*, 29 S.W.3d 103, 113 (Tex.Cr.App. 2000). "Adequate cause" refers to cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. Penal Code § 19.02(a)(1); *Wooten v. State*, 400 S.W.3d 601, 605 (Tex.Cr.App. 2013); *Naasz v. State*, 974 S.W.2d 418, 423-424 (Tex. App. - Dallas 1998).

In order for a jury to make an affirmative finding on the issue of sudden passion, the record must contain objective evidence that direct provocation by the victim occurred at the time of the killing. *Naasz*, 974 S.W.2d at 423-424. The record must also contain evidence from which the jury could subjectively decide that the accused killed the victim while in an excited and agitated state of mind arising out of the direct provocation. *Naasz*, 974 S.W.2d at 424.

As shown above, based on all of the evidence, including the eyewitness testimony, Appellant's statements and her testimony, the jury, who as the trier of fact evaluated the evidence adduced at trial, was permitted to reject sudden passion. See *Daniels v. State*, 645 S.W.2d 459, 460 (Tex.Cr.App. 1983)(finding sudden passion inapplicable because the defendant admitted that he had full control of himself when he shot the decedent and that he made a purposeful

11

choice to do so). The jury's rejection of sudden passion was supported by the evidence and was not so against the great weight and preponderance of the evidence as to be manifestly unjust. As outlined above, there was legally and factually sufficient evidence for the jury to have evaluated and rejected Appellant's defensive claim of sudden passion.

## Conclusion - Counter-Point One

The evidence was more than sufficient to warrant the jury's rejection of the Appellant's submission of sudden passion. The instant conviction should be affirmed.

## Appellant's Point of Error Two Restated

**The Jury's Negative Answer to the Self-Defense Issue in the Trial Court's Charge at the Guilt/Innocence Stage of the Trial Is Against the Great Weight and Preponderance of the Evidence, i.e., Factually Insufficient.**

## The State's Counter Point

**The Evidence is Sufficient to Support the Jury's
Rejection of the Self-Defense Submission.**

## Facts Relevant to Counter-Point of Error Two

The State relies on the facts set out in the Statement of Facts, *supra*, and in its reply to Point of Error Number One.

12

## Summary of the State's Argument - Counter-Point Two

The evidence is more than sufficient to warrant the jury's rejection of Appellant's self-defense submission.

## Argument & Authorities - Counter-Point Two

The issue of self-defense is a fact issue to be determined by the jury, and a jury's verdict of guilt is an implicit finding that it rejected a defendant's self-defense theory. *Saxton v. State*, 804 S.W.2d 910, 913-914 (Tex.Cr.App. 1991). Thus, as when reviewing the sufficiency of the evidence to support a conviction, an appellate court reviews the sufficiency of the evidence to support a jury's rejection of a defendant's self-defense theory by examining all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense and also could have found against the defendant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914, citing *Jackson v. Virginia*, 443 U.S. 307 (1979); see also *Isassi v. State*, 330 S.W.3d 633, 638-639 (Tex.Cr.App. 2010); *Brooks v. State*, 323 S.W.3d 893, 899-903 (Tex.Cr.App. 2010).

The standard for determining whether the evidence is legally sufficient to support a conviction is "whether, after viewing the evidence in the light most

13

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, *supra*; see *Garcia v. State*, 367 S.W.3d 683, 686-687 (Tex.Cr.App. 2012). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case. *Johnson v. State*, 364 S.W.3d 292, 294 (Tex.Cr.App. 2012); *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Johnson*, 364 S.W.3d at 294.

In reviewing the sufficiency of the evidence, the appellate court's role is not to substitute itself as a thirteenth juror. This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute a judgment for that of the fact-finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Cr.App. 1999). Reviewing courts give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214

S.W.3d 9, 13 (Tex.Cr.App. 2007), quoting *__Jackson v. Virgina__*, 443 U.S. at 318-319.

When an examination of all of the evidence in the light most favorable to the verdict is made, as required, it is clear that the jury in the case at bar acted as rational triers of fact in finding both the essential elements of the offense and rejecting the proposition that Appellant acted in self-defense. Penal Code § 19.02(b)(1) provides:

(b)     A person commits an offense if he:

(1)     intentionally or knowingly causes the death of an individual;

The indictment in this cause alleged that:

PRISCILLA AGUILAR HERNANDEZ, . . . DID THEN AND THERE INTENTIONALLY OR KNOWINGLY cause the death of an individual, namely, JIMMIE JOE HERNANDEZ, by STABBING HIM WITH A KNIFE AGAINST THE PEACE AND DIGNITY OF THE STATE.

(CR 14).

The court's charge on guilt-innocence contained a two page instruction on the law of self-defense (CR 243) and then required:

If you find from the evidence, or you have a reasonable doubt thereof, that, at the time of the alleged offense, the Defendant reasonably believed that she was under attack or attempted attack from Jimmie Joe Hernandez, and that the Defendant reasonably believed, as viewed from her standpoint, that such deadly force as she used, if any, was Immediately necessary to protect herself against such attack or attempted attack, and so believing, she stabbed Jimmie Joe Hernandez with a deadly weapon, to wit: a knife, then you shall acquit the Defendant of murder and say by your verdict "Not Guilty of murder."

15

Only if you find beyond a reasonable doubt that the Defendant's conduct was not justified as self-defense, as explained herein, may you find the Defendant "guilty" of the offense of Murder as alleged in the indictment.

(CR 246). Only then did the trial court charge the jury to consider the offense of murder:

Now if you find from the evidence beyond a reasonable doubt that on or about the 26th day of December 2010, in Menard County, Texas, the defendant, Priscilla Aguilar Hernandez, did then and there intentionally or knowingly cause the death of an individual, Jimmie Joe Hernandez, by stabbing him with a knife, then you will find the defendant, Priscilla Aguilar Hernandez, guilty of murder, as charged in the indictment.

(CR 246-247).

The record is clear - the indictment properly alleged the offense and the charge was correct both as to self-defense and the offense itself.

The evidence is just as clear that Appellant struck the blow which resulted in the death of her husband (RR Vol. 3, PP. 98-99; RR Vol. 4, PP. 206-207). The evidence was also clear, as detailed herein, that the fatal stabbing was the culmination of an escalating argument and that it was Appellant who introduced potentially deadly weapons into the argument by first hitting the deceased over his head several times with a cooking pot, followed by her throwing of a knife at the deceased, without effect. It was only then that Appellant, after the deceased continued the verbal argument, turned and stabbed her husband. This evidence was sufficient to allow a rational jury to find all of the elements murder as indicted and charged.

16

Under Penal Code § 19.02(b)(1), and the hypothetically correct jury charge as authorized by the indictment in this case, Appellant committed the offense of murder if she intentionally or knowingly caused the deceased's death. The charge given to the jury in the case at bar conformed with a hypothetically correct jury charge

The evidence was that Appellant, after hearing her husband tell her to "go fuck another boy," turned and stabbed him after she had earlier hit him with a cooking pan and thrown a knife at him. From the totality of the evidence, culminating in the actions described, the jury was entirely rational in finding that the Appellant committed the offense as charged.

When a defendant raises self-defense, he bears the burden of producing some evidence to support his defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Cr.App. 2005); *Saxton*, 804 S.W.2d at 913-914. Only when a defendant has met his burden does the State then bear a burden of persuasion in disproving self-defense, which has been characterized as a burden requiring the State to prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913-914.

Self defense was inapplicable in this case, despite the fact that Appellant received a charge on the issue (CR 243-245), and that charge required the jury

to consider the self-defense claim first, and reject it, prior to even considering the charged offense. That charge correctly instructed the jury that verbal provocation was not enough to warrant a defensive reaction (CR 245). Even Appellant in her brief recognized that she reacted to words (RR Vol. 3, P. 98; Appellant's Brief, P. 15). Self defense requires more, however. Penal Code § 9.31(a) provides:

> (a) Except as provided in Subsection (b), a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.

What force was there which was being exerted by the deceased which required "immediate" response is inadequately explained at best. That immediate force in response to deadly force was not required was clear, as the record shows that no force was being exerted by the deceased except the powerful force of the truth as he belittled his wife with that truth.

The evidence clearly showed that Appellant had turned away, returning to stab her husband in response only to his words to her. He was not threatening her in any manner, had not done so at least since they had come inside[1] and had failed to respond in kind to Appellant's several uses of force. Penal Code §

---

[1] Appellant testified that the deceased had pushed her while the other witness wasn't looking, (RR Vol. 4, PP. 205-206), which testimony the jury was free to reject. Be that as it may, the alleged push was followed by her hitting the deceased in the head and throwing a knife at him. The push, if it occurred, did not precipitate any reaction except those described.

18

9.31(b)(1) is clear with regard to the type of provocation shown by the record in this case:

> (b) The use of force against another is not justified:
>
> > (1) in response to verbal provocation alone.

Clearly, self defense was unsupported by the record. There is even more, however, since Appellant "defended herself" through the use of <u>deadly</u> force.

Even if one believes that Appellant showed an initial justification under Penal Code § 9.31, the prerequisite, then, under Penal Code § 9.32(a)(2)(A)&(B), the actor must have reasonably believed that the deadly force was immediately necessary to protect herself from "the other's use or attempted use of unlawful deadly force," or to prevent the other from committing certain named offenses, including murder. There is absolutely no evidence showing that the deceased was using or attempting to use any unlawful deadly force or attempting to commit any of the named offenses.

As set out, above, it is only when a defendant has met his burden that the State then bears a burden of persuasion in disproving self-defense, which has been characterized as a burden requiring the State to prove its case beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 913-914. In this case, Appellant never met her burden while the State, nonetheless, met its.

The State submits that the evidence produced before the jury more than adequately met that burden with regard to disproving any suggestion of self-defense, especially as it relates to the use of deadly force. The evidence is clear that Appellant was not protecting herself from any force whatsoever except the truth exposed verbally. That her husband's comment may have been "catty," or otherwise ill-advised or inappropriate, does not mean the comment was a use of illegal force of a deadly nature which required counter force. The evidence dictated the jury's decision to reject self-defense in this case.

## Conclusion - Counter-Point Two

The evidence was more than adequate for the jury to find the elements of the offense of murder beyond a reasonable doubt and, in so doing, to reject the defense of self defense.

## Prayer

WHEREFORE, PREMISES CONSIDERED, the undersigned, on behalf of the State of Texas, respectfully prays that this Honorable Court will review this brief and upon submission of the case to the Court will affirm the judgment and conviction of the court below.

Respectfully submitted,

/s/ Tonya Spaeth Ahlschwede

**Tonya Spaeth Ahlschwede**
District Attorney, 452nd District Court
1024 McKinley
Post Office Box 635
Mason, Texas 76849
eMail: tsa@452da.net
Tel: 325-347-8400
Fax: 325-347-8404
State Bar Card No. 24025656

Attorney for the State of Texas

## Certificate of Compliance and Delivery

This is to certify that: (1) this document, created using WordPerfect™ X7 software, contains 4,452 words, excluding those items permitted by Rule 9.4 (i)(1), Tex.R.App.Pro., and complies with Rules 9.4 (i)(2)(B) and 9.4 (i)(3), Tex.R.App.Pro.; and (2) on March 17, 2015, a true and correct copy of the above and foregoing "State's Brief" was transmitted via the eService function on the State's eFiling portal, to M. Patrick Maguire (mpmlaw@ktc.com), counsel of record for the Appellant.

/s/ Tonya Spaeth Ahlschwede

**Tonya Spaeth Ahlschwede**

21